Luke Joseph **RENER**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 40212.

Court of Criminal Appeals of Texas.

May 31, 1967.

Robert Maloney, Dallas, Phil Burleson (On Appeal Only), Dallas, for appellant.

Henry Wade, Dist. Atty., John Stauffer, Scott Bradley and Kerry P. FitzGerald, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

BELCHER, Judge.

The conviction is for possession of marijuana; the punishment, thirty years.

The testimony of the state reveals the possession by the appellant of marijuana, a narcotic drug, as charged.

As ground for reversal it is contended that the arrest of the appellant was illegal and the fruits of the arrest and search were inadmissible in evidence.

It is not necessary to pass upon the contention regarding the legality of the arrest and obtaining the possession of the cigarette. Any objection which the appellant may have had was waived as shown by the following quoted testimony which he introduced.

On direct examination by the appellant, Officer Watson, one of the two officers who participated in the arrest and in obtaining the cigarette from the appellant, testified in part as follows:

"DIRECT EXAMINATION"

BY MR. MALONEY:

"Q  Would you state your name to the Court and jury, please?

"A  Norman Watson.

"Q  I take it you're employed by the Dallas Police Department?

"A  Yes, sir.

\*      \*      \*      \*      \*      \*

"Q  Were you present at the time that Luke Rener (appellant) was arrested by you and your partner, Officer Walker, at Virginia and Annex?

"A  Yes, sir.

\*      \*      \*      \*      \*      \*

"Q  Where did you see Luke Rener?

"A  He was in a phone booth on the corner of Annex and Virginia.

\*      \*      \*      \*      \*      \*

"Q  Yes, in steps, how did you step to the phone booth?

"A  I walked over to it about five or ten feet and I ran the rest of the way.

"Q  Why did you run?

"A  Because I saw Luke pull what appeared to be a marijuana cigarette out of his sock.

\*      \*      \*      \*      \*      \*

"Q  Tell the jury how he did that?

"A  He reached down with his right hand and pulled his left leg up and pulled the cigarette from his sock.

"Q  What did he do with the cigarette?

"A  Put it in his mouth.

"Q  All right, what made you think that was a marijuana cigarette?

"A  It wasn't a normal cigarette. It had the appearance of being a hand-rolled cigarette, which most marijuana cigarettes are hand rolled.

\*      \*      \*      \*      \*      \*

"Q  All right, and what did he (Officer Walker) do as he walked to the phone booth?

"A  He did the same thing I did. He walked, I would say, within probably ten feet and then he started running, that was about the time I saw him.

"Q  Did you run because he was running or something that you saw?

"A  No. I was running because I saw Luke pull the cigarette out of his sock.

"Q  All right, tell me how he did that. Where was his hands and what did he do?

"A  All I saw was his right hand and he lifted that left leg up and pulled a cigarette out of his sock.

\*      \*      \*      \*      \*      \*

"Q  Just reached down and got this cigarette out of his sock. Now, how was he holding that in his hand?

"A  When he came out with it, he just had it between his fingers.

"Q  Had it between his fingers and put it in his mouth, is that right?

"A  Yes, sir.

\*      \*      \*      \*      \*      \*

"Q  All right. What did your partner do?

"A  He was in the phone booth trying to get the cigarette out of his mouth.

\*      \*      \*      \*      \*      \*

"Q  What did you see Officer Walker do with the marijuana cigarette, if you saw it, after he supposedly took it out of Luke's mouth?

"A  He showed it to me while I still had Luke around the throat. He held it up and said, 'I've got the

cigarette.' And, then, he put it in his pocket, I believe."

\* \* \* \* \* \*

Having introduced evidence of the possession of the cigarette in question, which was shown to contain marijuana, the appellant is not in position to complain of the proof of the same fact by Officer Walker. 5 Tex.Jur.2d 704, Sec. 445; Sutton v. State, 166 Tex.Cr.R. 580, 317 S.W.2d 58; Garza v. State, Tex.Cr.App., 397 S.W.2d 847.

■ A fatal variance between the alleged date of the prior conviction and the proof is urged as a ground for reversal in that the mandate, after affirmance of the case on appeal, was issued June 25, 1960, and filed with the clerk of the trial court on June 29, 1960.

It was alleged that the prior conviction became final on January 11, 1960.

The evidence shows that said judgment was rendered and entered on January 11, 1960, and that sentence was pronounced upon the same date.

The appeal, the affirmance and the issuance of the mandate which was filed with the clerk of the trial court on June 29, 1960, did not affect the date of the finality of the judgment rendered and entered and the sentence pronounced by the trial court on January 11, 1960. The proof corresponds with the allegations of the prior conviction. No variance is shown. Goodale v. State, 146 Tex.Cr.R. 568, 177 S.W.2d 211.

■ Error is urged on the ground that the state read to the jury the allegations of the prior conviction upon the trial on the issue of guilt or innocence.

This matter first arose during the cross-examination of the appellant as follows:

"Q  Let me read you something here, Luke (appellant), and you tell me if this is you: (The enhancement allegations of the prior conviction were read.)

"And they're referring there to what we read you yesterday when you pled here. Is all that true that I just read you? That's all true, isn't it? Having to do with this business in Judge Brown's Court in 1960?

"A  I guess, I didn't hear him read it all that.

"Q  In other words, then, you don't want to admit that all of this is true?

"A  I don't know.

"Mr. Maloney: Your Honor, I object to that.

"The Court: I'll sustain it."

Next, without objection, the appellant admitted the prior conviction, in 1960, and further testified without objection, that while out on parole on said prior conviction he pled guilty to the possession of dangerous drugs which resulted in the revocation of his parole on the 1960 conviction.

Following the return of the verdict of guilty by the jury on the primary offense, the appellant elected to have the jury assess the punishment. Upon the reading of the second paragraph of the indictment to the jury, the appellant pled nolo contendere. In considering the above ground urged as error in light of the record, no reversible error is shown.

The other grounds urged as error have been considered and no error is presented by either of them.

The judgment is affirmed.