Howard HEARD, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–97–503–CR.

Court of Appeals of Texas,
Corpus Christi.

June 24, 1999.

William T. Reece, Jr., San Antonio, Kevin L. Collins, Reece & Collins, San Antonio, for Appellant.

Alan E. Battaglia, Edward Schaughnessy, Asst. Dist. Attys., San Antonio, for State.

Before Justices DORSEY, CHAVEZ, and RODRIGUEZ.

## OPINION ON MOTION FOR REHEARING

Opinion by Justice CHAVEZ.

We withdraw our opinion of April 29, 1999, and substitute this opinion in its place.

Appellant Howard Heard was convicted of murder[1] in a bench trial and sentenced to fifty years in prison. On appeal, he challenges the sufficiency of the evidence supporting his conviction, and argues that the trial court erred in denying his motion for discovery of the identity of a confidential informant. We hold that sufficient evidence was presented, but that the trial court committed reversible error in failing to conduct an in camera hearing on appellant's motion for discovery of the confiden-

tial informant and subsequently denying the motion.

The State's principal witness, Bobby Mitchell, testified that he was inside a friend's house on Poinsetta Street in San Antonio watching television on the evening of December 8, 1995. He heard some men arguing outside the house, and then heard a shotgun blast. A few seconds later, he heard another shotgun blast. He cracked the front door to look outside, and saw Heard and "William"[2] dragging the body of a man who had been shot. Heard was wearing a jacket that hung down to his knees and holding a shotgun that Mitchell knew to be Heard's. Heard told him to close the door, and Mitchell complied.

Mitchell admitted that the house he was in on the night in question was a "crack house," and that on that day he had both sold crack cocaine and smoked some himself. He added, however, that at the time of trial he was working for a temporary agency and had stopped selling and smoking crack cocaine.

Another witness for the State, David Bautista, testified he had lived on Poinsetta Street at the time of this crime. He came home from work on the night of December 8, 1995 and noticed a small group of two—four[3] men talking across the street. He could not identify any of the men because it was dark and difficult to see. One of the men was wearing "a long jacket or something like that," that hung down below his knees. He saw that man fire a gun two times at one of the other men. He then saw two men, one of whom was the man who had fired the shots, drag the body away. Then he went into his house and called the police.

Heard testified that he was in the front yard of the house on Poinsetta when the victim, Kenny Holland, pulled up and

1. Tex Pen.Code Ann. § 19.02(b)(1) (Vernon 1994).

2. The record does not indicate William's last name, and William did not appear as a witness for either side.

3. Bautista at first testified that there were two or three men, but later testified that there might have been as many as four.

asked to buy crack cocaine. Heard testified that he had none to sell him, so he went inside. While inside the house he heard two gunshots. He went back outside and found William dragging the victim's body away. William asked Heard to help him, but Heard refused.

██ Appellant does not specify whether he is challenging the legal or the factual sufficiency of the evidence supporting his conviction. We will consider both standards. The standard of review for challenges to the legal sufficiency of the evidence in criminal cases is that set forth in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Clewis v. State,* 922 S.W.2d 126, 132–33 (Tex.Crim.App.1996). The *Jackson* standard inquires whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789. The verdict may be set aside pursuant to a factual sufficiency challenge only if, after viewing all the evidence without the prism of "in the light most favorable to the prosecution," it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis,* 922 S.W.2d at 129. The trial judge, when sitting as the trier of facts, is the exclusive judge of the credibility of the witnesses and the weight to be given to their testimony, and may accept or reject all or any part of the testimony of any witness. *Joseph v. State,* 897 S.W.2d 374, 376 (Tex. Crim.App.1995). The reviewing court may not substitute its own judgment for that of the factfinder. *Clewis,* 922 S.W.2d at 133.

Appellant's brief emphasizes the poor credibility of the State's principal witness, Bobby Mitchell. Appellant refers to Mitchell's use of crack cocaine, and also notes Mitchell's own admission that he had "told a lie" to police the first time he gave them a statement, when he neglected to implicate Heard. Appellant also identifies internal contradictions in Mitchell's testimony.

Appellant has shown that the judge, as factfinder, had ample basis to question Mitchell's credibility. However, the judge remained free to accept all or any part of Mitchell's testimony as true. *Joseph,* 897 S.W.2d at 376. We, as an appellate court, may not question the factfinder's determinations regarding the credibility of witnesses. Setting aside any concerns for the credibility of witnesses, the evidence shows the following: The victim died from a shotgun blast. Mitchell saw Heard holding a shotgun and dragging the victim's body away moments after the shooting. Bautista saw the shots fired by a man dressed in the same way Mitchell described Heard. Although another man was present (William), there is no evidence that William was armed. We hold that this evidence was sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt, and the guilty verdict was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789; *Clewis,* 922 S.W.2d at 129. Appellant's first point of error is overruled.

██ Appellant's second point of error argues that the trial court erred in denying his motion for disclosure of the identity of the confidential informant who told police where to find the murder weapon. Under Texas Rule of Evidence 508, the State has a privilege to refuse to disclose the identity of a person who has furnished information to a law enforcement officer relating to an investigation of a possible violation of the law. TEX.R. EVID. 508(a). A criminal defendant may overcome this privilege by showing that an informer can give testimony necessary to a fair determination of guilt or innocence. TEX.R. EVID. 508(c)(2). If it appears that the informer may be able to provide such testimony, the trial court shall hold an in camera hearing and afford the State the opportunity to present evidence relevant to determining

whether the informer can, in fact, supply the testimony. *Id.; Bodin v. State,* 807 S.W.2d 313, 318–19 (Tex.Crim.App.1991). Upon review of such materials, the trial court should order disclosure only where the informer's potential testimony will significantly aid the defendant; mere conjecture or supposition about possible relevancy is insufficient. *Id.* at 318.

However, because the defendant may not actually know the nature of the informer's testimony, he or she is only required to make a plausible showing of how the informer's information may be important to merit an in camera hearing. *Id.* Where the defendant has made the requisite "plausible showing" and the trial court fails to conduct an in camera hearing to determine whether the informer could, in fact, supply testimony necessary to a fair determination of guilt or innocence, the trial court has erred. *Id.* at 318–19; *Loving v. State,* 882 S.W.2d 42, 45–46 (Tex. App.—Houston [1st Dist.] 1994, no pet.).

Prior to the enactment of rule 508, Texas law, drawing on the United States Supreme Court's opinion in *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), required disclosure if the informer: (1) participated in the offense; or (2) was present at the time of the offense or arrest; or (3) was otherwise shown to be a material witness to the transaction or as to whether the defendant knowingly committed the offense charged. *Anderson v. State,* 817 S.W.2d 69, 71 (Tex. Crim.App.1991). However, rule 508's "testimony necessary to a fair determination of guilt or innocence" test requires disclosure in a broader range of circumstances than the three categories of the former rule. *Bodin,* 807 S.W.2d at 318.

In this case, Heard filed a motion for disclosure of the identity of the confidential informant, arguing that the murder weapon was hidden in an obscure location, and the informer's knowledge of its whereabouts suggested that the informer was present when the weapon was disposed. Heard argued that "because the informant

appears to be so closely connected with the details of this murder, the identity of the informant is crucial for impeachment of this critical witness [Mitchell] for the state."

The trial court conducted a hearing on the motion in open court. The State brought investigator Davis Scepanski to testify, but asked that the trial judge question the witness in camera to protect the identity of the confidential informant. The trial judge refused, explaining, "Based on the testimony that I hear this morning I will rule as to whether or not you will be required to reveal the informant's name. *That needs to be done in open court* (emphasis added)." The trial court was wrong. To protect the informer's confidentiality while also allowing the court to rule based on full disclosure of relevant information, rule 508 requires that the State be permitted to submit evidence for the trial court to review in camera.

Indeed, the open court hearing conducted in this case demonstrates why rule 508 provides for an in camera hearing. The investigator testified that the confidential informer did not participate in the crime and was not a witness to the actual shooting, but that the informer did provide police with "very specific" directions that enabled them to find the weapon, and told police that the weapon had been used in the crime. Appellant's attorney then asked about the location where the gun was hidden, how the informer knew the gun was hidden there, and how the informer knew that it had been used in the crime. These questions were crucial to determining whether the informer could provide testimony necessary to a fair determination of guilt or innocence. However, because the trial court erroneously insisted on conducting the hearing in open court, the State objected on the ground that answering these inquiries might betray the identity of the confidential informer. The trial court sustained the objection and

321

closed off these crucial lines of inquiry, commenting:

> Counsel, I understand your [appellant's] frustration and I certainly understand the questions that you are attempting to ask; however, the questions must be directed only to those issues that I have already outlined, and that is whether or not there was an informant and whether or not he was present at the scene, whether or not he's a material witness to the transaction itself and those are the only issues that we will address this morning.

The trial court applied the wrong legal standard in limiting the scope of the hearing. While disclosure is indeed required when a confidential informer is "present at the scene" or "a material witness to the transaction itself," there may be many circumstances other than those two where the informer "can give testimony necessary to a fair determination of guilt or innocence." *Bodin*, 807 S.W.2d at 317–18.

The procedure employed by the trial court precluded any meaningful verification of the investigator's testimony. The trial court was sensitive to this problem, and informed those present at the end of the hearing "if, at anytime, you find out ... that this officer's testimony was incorrect, then you need to bring it to my attention because certainly there are sanctions to be applied at that time, but there is nothing this morning." However, there was something that could be done that morning—an in camera hearing. We hold that the trial court erred in overruling appellant's motion without conducting a proper inquiry as directed by rule 508. *Id.* at 319.

■ We proceed to consider whether this error requires that the judgment of the trial court be reversed. Errors in criminal cases are subject to the harmless error standard found in Texas Rule of Appellate Procedure 44.2. Under that rule, only certain federal constitutional errors labeled by the United States Supreme Court as "structural" are categorically im-

mune to reversible error analysis. *Salinas v. State*, 980 S.W.2d 219, 219 (Tex. Crim.App.1998); *citing Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997). Other constitutional errors require reversal of the trial court's judgment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex.R.App. P. 44.2(a). Non-constitutional errors require reversal of the trial court's judgment only if the error affects a substantial right of the defendant. Tex.R.App. P. 44.2(b).

Rule 508 grew out of common law doctrine. *Anderson*, 817 S.W.2d at 71. *Roviaro*, the leading authority for the common law doctrine, did not rely on constitutional due process for the rule, but rather case law built on "public policy" and the "ends of justice." *Roviaro*, 353 U.S. at 61 n. 9, 77 S.Ct. 623. Therefore, we hold that the trial court's error was non-constitutional, and will apply the "substantial right" test for reversible error.

■ A substantial right is affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (*citing Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). In *Kotteakos*, the United States Supreme Court explained the standard of review:

> If, when all is said and done, the [reviewing court] is sure that the error did not influence the jury or had but very slight effect, the verdict and judgment should stand.... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.

*Kotteakos*, 328 U.S. at 764–65, 66 S.Ct. at 1248.

In this case, the very nature of the error prevents us from assessing its harm. Because the trial court denied Heard's motion without conducting a proper rule 508 inquiry, the record does not contain adequate materials to permit us to say, with fair assurance, whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Id.* To make such a determination, we would need the benefit of the materials the State should have been permitted to provide under seal regarding the nature of the informer's testimony. While the court of criminal appeals has required that courts of appeals apply reversible error analysis to all errors other than "structural" constitutional errors, it has acknowledged that the harm caused by some errors defies analysis, and that, in those situations, the judgment of the trial court must be reversed. *See Cain,* 947 S.W.2d at 264. This is one of those situations.

The judgment of the trial court is reversed and we remand this case for a new trial.