Daniel Louis BEAL, Appellant,

v.

The STATE of Texas, Appellee.

No. 99–00140–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

July 27, 2000.

Order Denying Rehearing En Banc
Jan. 25, 2001.

**680**

Steven J. Leiberman, Houston, for Appellant.

Gregory A. McGee, John B. Holmes, Houston, for State.

Panel consists of Justices O'CONNOR, NUCHIA, and DUGGAN.*

## OPINION

SAM NUCHIA, Justice.

A jury found appellant guilty of possession of a controlled substance with the intent to deliver and made a finding that appellant used a deadly weapon. The Court found an enhancement paragraph based on an aggravated robbery true and sentenced appellant to 40 years confinement. We affirm.

## BACKGROUND

John Barnes had known appellant for several years. Barnes also knew that appellant sold drugs. In 1998, Barnes was arrested and convicted for possession of a controlled substance. At the time of appellant's trial, Barnes had not been sentenced. Although he had no formal agreement with either State or Federal prosecutors, he was hoping to help himself by becoming an informant for the Drug Enforcement Agency (DEA) in May of 1998. To that end, he called appellant on June 3, 1998 to buy two ounces of methamphetamine. Calling appellant was his idea, not the DEA's. Before his arrest, Barnes had not been an informant, and his case agent, Trent Broussard, did not begin an investigation against appellant

until Barnes informed him that appellant was a drug dealer.

At appellant's trial, Barnes testified that he called appellant and told him he wanted to buy two ounces of methamphetamine. The next day, Barnes recorded a telephone call with appellant in which appellant told Barnes he had two ounces of methamphetamine that he could sell Barnes for $2,400. The sale did not take place, but Barnes continued to have phone conversations with appellant and met with him a few weeks later to set up a larger drug deal.

Barnes told appellant he had an uncle, Mr. B., who wanted to buy some methamphetamine. Mr. B. was actually a confidential informant for the DEA. The next day, Barnes picked up Mr. B., who then recorded a phone call between himself and appellant. During that call, appellant showed familiarity with drug slang, and indicated he wanted additional money for the sale of nine ounces of methamphetamine. Mr. B. also recorded another phone call to appellant discussing the upcoming drug deal.

A short time later, appellant and Christopher Schimming met Barnes and Mr. B. in the parking lot to finish the deal. DEA agents monitored the transaction and arrested appellant after he delivered 156 grams of methamphetamine.

Schimming, a young teenager, testified that Anthony Contreras offered him one hundred dollars to go to the drug deal. Shimming said he went with appellant to "watch out for the drugs." Appellant got a car from Contreras. The drugs were in the console, and a handgun was under the passenger seat. After appellant and Schimming got into the car to drive to the drug deal, Schimming took the gun from underneath the seat and put it under his leg. Schimming kept the gun under his leg while the drug deal was taking place, but pushed it into the crevice between the

---

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas    at Houston, participating by assignment.

passenger side door and seat when the police arrived. Schimming testified he *thought* appellant should have known he had a gun because of his small size, his role as "protection," and Contreras's comments to him and appellant. However, Shimming testified that he did not *know* if appellant knew he had a gun.

Appellant testified he possessed methamphetamine with the intent to deliver. Appellant also testified he was convicted of the aggravated robbery, first claiming it was on appeal, but eventually admitting the conviction had been affirmed. Appellant testified that Barnes called him repeatedly trying to get him to sell drugs. Appellant admitted telling Barnes he would try to set up a deal for him, but claimed he did not actually intend to sell drugs until he lost his job. Appellant said he set up the deal with Contreras, a drug dealer he knew from the neighborhood. Appellant knew Schimming was going along to look out for the drugs, but claimed he did not know Schimming had a gun. Appellant did not dispute the accuracy of any of the tape recordings, and he admitted it was his voice on the tapes.

After appellant was convicted and sentenced, he filed a motion for new trial claiming ineffective assistance of counsel. At the motion for new trial hearing, appellant's trial counsel, Peter Heckler, testified that he was retained to represent appellant when appellant was charged in federal court. The federal charges were dismissed, and state charges were filed. Heckler continued to represent appellant. Heckler appeared in court on behalf of appellant in July, August, September, and October. Heckler testified that he reviewed the DEA offense report and parts of the State's file, listened to the tape recordings, and discussed the case with appellant. Heckler also testified that he spoke with appellant at least 12 different times. Heckler testified his trial strategy was to put on a defense of entrapment. He said he had researched the defense of entrapment, was allowed to present evidence of entrapment at trial, and had prepared a proposed instruction on entrapment. Heckler testified he discussed the entrapment strategy with appellant before appellant testified; however, he said, "In my opinion, it wasn't sufficient."

Heckler testified that the State offered appellant a plea bargain of eight years that was good until November 3, 1998. Before the November 3, 1998 setting, appellant, while in custody, learned of "a plot against the trial court." Heckler testified that he and appellant hoped to use this information to get a better plea bargain. Instead of accepting the plea offer, Heckler set the case for trial. During the six weeks the case was set for trial, Heckler received notice of two of appellant's prior offenses.

Heckler testified that on December 9, 1998, recognizing he was not going to get a better deal than in the expired plea bargain, he requested the assistant district attorney to allow appellant to accept the original plea offer. The district attorney refused and offered 25 years. Heckler testified that he refused the offer and filed a motion for continuance, claiming he was not prepared for trial on December 14, 1998. The court denied his motion, and jury selection began that day.

The judge denied appellant's motion for new trial.

## I. Ineffective Assistance of Counsel

In his first three points of error, appellant contends that his trial counsel was ineffective under the United States Constitution and the Texas Constitution, and that the court abused its discretion by denying the motion for new trial based on the ineffective assistance of counsel. Appellant cites 15 instances where he claims trial counsel's assistance was ineffective.

The standard of review for evaluating claims of ineffective assistance of counsel is the same under both the United States Constitution and the Texas Constitution. Appellant must show that (1) counsel's performance was so deficient that he was

not functioning as acceptable counsel under the sixth amendment, and (2) but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *See Thompson v. State,* 9 S.W.3d 808, 812 (Tex.Crim.App.1999); *Gamble v. State,* 916 S.W.2d 92, 93 (Tex.App.—Houston [1st Dist.] 1996, no pet.).

It is the defendant's burden to prove ineffective assistance of counsel. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064; *Gamble,* 916 S.W.2d at 93. A defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2064; *Thompson,* 9 S.W.3d at 813; *Gamble,* 916 S.W.2d at 93.

## A. Instances of alleged ineffectiveness that were waived

■ Appellant alleges his trial counsel was ineffective when he (1) did not file a pretrial motion or request a hearing on the issue of entrapment as a matter of law; (2) did not move to quash the enhancement paragraph due to lack of finality; and (3) did not investigate the extraneous offense used at punishment. However, appellant makes no argument on these issues in his brief, does not cite any legal authority on these points, or mention them any further at all. Appellant has preserved nothing for review on these points of error. TEX. R.APP. P. 38.1(h); *Smith v. State,* 683 S.W.2d 393, 410 (Tex.Crim.App.1984) (holding where defendant cited no authority and presented no argument on the issue nothing was preserved for appellate review).

■ Appellant also presents nothing for review on the assertion that counsel did not preserve error for review by not making offers of proof following the trial court's limitation of cross and direct examination. Appellant cites no legal authority and does not point to where in the record he claims the judge limited counsel's exam-ination. *See Bell v. State,* 620 S.W.2d 116, 126 (Tex.Crim.App.1980) (holding not calling attention to any portion of the record from which to identify the action claimed of presents nothing for review); *Thompson v. State,* 915 S.W.2d 897, 906 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (holding not identifying cites to the record where counsel did not object preserves nothing for review on an ineffective assistance of counsel claim).

## B. Instances of alleged ineffectiveness that could have been trial strategy

■ Appellant claims counsel was ineffective because he did not timely accept the State's plea bargain offer. The record of the motion for new trial hearing indicates, however, counsel's strategy was to get a better plea bargain offer than eight years by informing the court of the "security threat." *See Delrio v. State,* 840 S.W.2d 443, 447 (Tex.Crim.App.1992) (holding counsel was not ineffective simply because his trial strategy did not produce the desired result). Not accepting the plea bargain under these circumstances was a valid trial strategy and does not establish ineffective assistance of counsel.

■ Appellant also alleges two instances of ineffectiveness which were not addressed in the written motion for new trial or at the hearing on the motion for new trial: (1) not challenging jurors who were disqualified because they could not be fair and impartial; and (2) not requesting a limiting instruction regarding the extraneous offense. Because the record is silent as to counsel's reasons for his actions, we will not speculate as to counsel's trial strategy. *Lagaite v. State,* 995 S.W.2d 860, 864 (Tex.App.—Houston [1st Dist.] 1999, pet ref'd). As to these alleged instances of ineffectiveness, appellant has not overcome the strong presumption that counsel's actions might have been sound trial strategy. *Holland v. State,* 761 S.W.2d 307, 320 (Tex.Crim.App.1988) (holding allegations of ineffective assistance of counsel will be sustained only if

they are firmly founded in the record); *Lagaite*, 995 S.W.2d at 864 (holding that, although appellant filed a motion for new trial, he did not raise an ineffective assistance of counsel claim; therefore, the court would not speculate as to counsel's reasons for his actions).

### C. Instances of alleged ineffectiveness that do not meet the second prong of *Strickland*

■ Appellant claims his counsel was ineffective because: (1) he did not conduct an independent investigation of the facts; (2) he did not file any discovery motions; (3) he was not prepared for trial; (3) he did not make a pretrial request for disclosure of the confidential informant's identity; (4) he did not present any punishment evidence on appellant's behalf; and (5) he did not inform and prepare appellant for his testimony.

Although the record indicates the accuracy of some of these claims is questionable, we note that appellant has not established that, had counsel taken the actions listed above, the result of the trial would have been different, as required by the second prong of *Strickland*. See *McFarland v. State*, 928 S.W.2d 482, 501 (Tex. Crim.App.1996) (holding that counsel was not ineffective for not having investigated without a showing that a viable defense could have been advanced); *King v. State*, 649 S.W.2d 42, 44 (Tex.Crim.App.1983) (holding when counsel did not show that witnesses had been available and could have testified favorably, no harm was shown); *Medina v. State*, 962 S.W.2d 83, 87 (Tex.App.—Houston [1st Dist.] 1997, pet. ref'd) (holding when appellant does not establish that the result would have been different had counsel not erred, he has not met the requirements of the second prong of *Strickland*); *Thompson*, 915 S.W.2d at 906 (holding a defendant must show what conducting discovery of the State's witnesses would have revealed before there is a finding of ineffectiveness of counsel); *Hoang v. State*, 825 S.W.2d 729, 733 (Tex.App.—Houston [1st Dist.] 1992,

pet. ref'd) (holding counsel was not ineffective in not calling friends and family members at the punishment stage of trial where there was no evidence their testimony as to defendant's good character would have affected the outcome); *Perrett v. State*, 871 S.W.2d 838, 841 (Tex.App.—Houston [14th Dist.] 1994, no pet.) (holding counsel was not ineffective when appellant did not specifically show how meeting with his counsel at the jail would have benefitted his defense or how jail consultations, as opposed to court consultations, would have impacted the outcome of the case); *Huynh v. State*, 833 S.W.2d 636, 638 (Tex. App.—Houston [14th Dist.] 1992, no pet.) (holding reviewing courts cannot reverse based on speculation as to whether a pretrial discovery motion may have provided counsel with other witnesses that could have supported an alibi or mistaken identity).

### D. Other instances of alleged ineffectiveness

Appellant argues counsel was ineffective for not requesting a jury instruction on accomplice witness testimony because the State relied on Schimming's testimony to show appellant used a deadly weapon. At the motion for new trial hearing, Heckler testified Schimming was an accomplice, and not requesting a jury instruction about accomplice testimony was not his trial strategy.

■ While the failure to request a jury instruction on accomplice witness testimony may constitute ineffective assistance of counsel in some circumstances, in other circumstances it does not. *Shaw v. State*, 874 S.W.2d 115, 120 (Tex.App.—Austin 1994, pet ref'd). In *Robinson v. State*, the court found that counsel's failure to request an accomplice witness jury instruction was a "glaring error." *Robinson*, 665 S.W.2d 826, 831–32 (Tex.App.—Austin 1984, pet. ref'd). However, because the same evidence as that of the accomplice's testimony was adduced through the testimony of non-accomplices,

and the appellant's guilt was overwhelming, the appellant was not deprived of effective assistance of counsel. *Id.*

■ Appellant cites *Ex parte Zepeda* as standing for the proposition that when counsel does not request an instruction on the law of accomplice witness testimony, he is ineffective. 819 S.W.2d 874 (Tex. Crim.App.1991). In *Zepeda*, aside from the accomplice witness testimony, none of the other evidence tended to connect Zepeda to the commission of the murder. The accomplice testimony in *Zepeda* was essential to the State's case. Furthermore, the court of criminal appeals noted that had the jury been informed that it could not convict Zepeda without corroboration of the testimony of accomplice witnesses, in light of the remaining evidence presented, there was a reasonable probability a rational jury would not have convicted Zepeda. *Id.* at 877. Under those circumstances, the court held counsel was ineffective for not requesting an instruction on the law of accomplice testimony. *Id.*

Schimming, the accomplice witness, testified that appellant should have known he had a gun because he was small, and appellant knew he was going along to "watch out for the drugs." But Schimming also said he did not know if appellant saw the gun or knew he had it. Appellant was connected to the drug crime by positive eyewitness testimony. Appellant himself testified to all of the elements necessary to establish possession with intent to deliver, but claimed entrapment. Appellant testified that he knew Schimming's role was to watch out for the drugs.

Agent Broussard testified that weapons are commonly used for protection in drug deals, and the gun in this case was located in the crevice between the door and seat located on the passenger side of the car, which was also within grasp of appellant. Schimming's testimony was adequately corroborated by other evidence; therefore, we find no reasonable probability that the result of the trial would have been different if the omitted instruction had been submitted to the jury.

Appellant also alleges that counsel did not understand the law of entrapment and, therefore, did not object to the charge or request that the jury be instructed that a law enforcement agent could entrap appellant without acting on specific instructions to do so. The trial court record reflects that counsel did object to the proposed wording of the jury charge and asked that the word "specific" be struck.

We overrule appellant's first, second, and third points of error.

## II. Denial of Motion for Continuance and Motion for New Trial

In his fourth and fifth points of error, appellant contends the trial court erred in denying his motion for continuance and his motion for new trial asserting counsel was not prepared for trial.

■ We review the denial of a motion for continuance and the denial of a motion for new trial under an abuse of discretion standard. *Duhamel v. State*, 717 S.W.2d 80, 83 (Tex.Crim.App.1986) (motion for continuance); *Lewis v. State*, 911 S.W.2d 1, 7 (Tex.Crim.App.1995) (motion for new trial); *Laidley v. State*, 966 S.W.2d 105, 107 (Tex.App.—Houston [1st Dist.] 1998, pet. ref'd) (motion for new trial). To find an abuse of discretion in refusing to grant a motion for continuance, there must be a showing that defendant was prejudiced by his counsel's inadequate preparation time. *Duhamel*, 717 S.W.2d at 83.

■ To show prejudice suffered by appellant, counsel adopts and incorporates the argument and authorities provided in his first three points of error. We have already held that appellant did not establish any specific prejudice based on the fact that the court denied his motion for continuance or motion for new trial. We find the court did not abuse its discretion in denying appellant's motion for continuance or motion for new trial.

We overrule appellant's fourth and fifth points of error.

## III. Disclosure of Confidential Informant

In appellant's sixth, seventh, and eight points of error, he asserts the trial court denied him due process under both the United States Constitution and the Texas Constitution when it denied his request for disclosure of the confidential informant. Counsel requested disclosure of the confidential informant during trial and made an offer of proof alleging he only discovered that Mr. B. was not a police officer during Barnes's testimony.[1]

An informant's identity should be revealed when the testimony of the informant is necessary to a fair determination of the issues of guilt or innocence of the accused. Tex.R. Evid. 508(c)(2). Appellant made a showing with Barnes's testimony that the informant was present when the delivery of the drugs was made. When it is shown the informant was an eyewitness to an alleged offense, the informant can give testimony necessary to a fair determination of the issues of guilt or innocence. *Anderson v. State*, 817 S.W.2d 69, 72 (Tex.Crim.App.1991) (holding when informant was an eyewitness to an alleged offense, the informant can give testimony necessary to the fair determination of guilt). The trial court erred by not instructing the State to disclose the identity of the informant; therefore, we must determine whether that error was harmless.

Rule 508 and the confidentiality of informants arose out of common law and public policy. *Bodin v. State*, 807 S.W.2d 313, 316 (Tex.Crim.App.1991). As such, no constitutional rights are implicated, and error is governed by Texas Rule of Appellate Procedure 44.2(b). *Heard v.* State, 995 S.W.2d 317, 321 (Tex.App.— Corpus Christi 1999, pet. ref'd) (holding a trial court's failure to disclose a confidential informant's identity must be analyzed under the "substantial right test"); Tex. R.App. P. 44.2(b). A substantial right is affected when the error had a substantial or injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997).

Appellant testified that he possessed the drugs with an intent to deliver. Appellant's only claims are that (1) he had no knowledge that a gun was used, and (2) that he was entrapped by Barnes and Broussard. Appellant does not allege that CS2 had any information about the gun that was found at the scene of the drug deal. The record indicates that CS2 and Barnes met appellant and Schimming in the Kroger parking lot to make the drug deal. CS2 was the driver of the car and Barnes was the passenger. When appellant and Schimming arrived, appellant got out of the passenger side of the car he was driving and went over to the confidential informants' car. Appellant got into the back seat of the confidential informants' car for about 30 seconds, and then he got out of the informants' car, walked back to his car, got the drugs, and returned to the informants' car. Schimming had the gun inside the car during this entire transaction. CS2 did not get out of the car during this transaction so he could not have given any information about the gun that was found or appellant's knowledge of the gun.

Appellant argues on appeal that CS2's identity was required to establish his defensive theory of entrapment; however, he testified at trial that he was induced to commit the offense by Barnes. Appellant did not testify that he was entrapped by CS2, and the jury charge on entrapment

---

1. Contrary to this claim, Heckler testified, at the motion for new trial hearing, that before trial began, he had reviewed the offense report which listed two confidential informants, CS1 and CS2. Heckler also testified he had listened to the taped conversations between appellant and the confidential informants. These tapes had three different voices speaking on them. In one tape, appellant is speaking with CS2, and CS1 can be heard in the background giving CS2 a phone number where appellant can reach them.

only alleged Broussard and Barnes entrapped appellant. Barnes and Broussard both testified at trial, and appellant had the opportunity to question both of them about his defensive theory of entrapment as well as the involvement of CS2. The evidence against appellant was very strong. The taped conversations clearly outweighed any potential effect on the jury that might have been gained by cross examination of CS2. We find the court's error in not disclosing the identity of the confidential informant did not have a substantial or injurious effect or influence in determining the jury's verdict. The error was harmless.

We overrule appellant's sixth, seventh, and eighth points of error.

## IV. Legal and Factual Sufficiency

In points of error nine and 10, appellant claims the evidence was legally and factually insufficient to support the jury's verdict that he used or exhibited a deadly weapon. Specifically, appellant alleges (1) a deadly weapon was not used or exhibited; and (2) because he had no knowledge that Schimming had a gun during the drug deal, the evidence is factually insufficient to support a finding that he used a deadly weapon.

We follow the usual standards of review for factual and legal sufficiency challenges. *See Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996) (legal sufficiency); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim.App.1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996) (factual sufficiency).

■ The "use" of a deadly weapon during the commission of a felony offense extends to any employment of a deadly weapon, including its simple possession, if such possession facilitated the associated felony. *Patterson v. State*, 769 S.W.2d 938, 941–42 (Tex.Crim.App.1989) (holding appellant had "used" the gun in the sense that it protected and facilitated his possession of the contraband); *Ramirez v. State*,

822 S.W.2d 240, 245 (Tex.App.—Houston [1st Dist.] 1991, pet ref'd).

■ As set out previously, the testimony of Schimming and Agent Broussard show that the weapon was loaded and ready at hand in the car that appellant and Schimming used to go to the drug deal location. Appellant and Schimming agreed that Schimming's role was to protect the drugs. The evidence warrants the inference that both appellant and Schimming were aware of the details of the drug deal, including that the weapon was there for protection of the drugs. *See Johnson v. State*, 6 S.W.3d 709, 713 (Tex.App.— Houston [1st Dist.] 1999, pet. ref'd). The evidence is legally and factually sufficient to support the jury's affirmative finding that a deadly weapon was used.

We overrule appellant's ninth and tenth points of error.

## V. Enhancement Conviction Finality

In points of error 11 and 12, appellant argues the evidence is legally insufficient to support a finding of true to the enhancement paragraph, and the trial court erred in finding the enhancement paragraph true because the conviction alleged in the paragraph was not final before the commission of this offense.

Appellant was charged with the offense at issue, possession with intent to deliver, on July 7, 1998. The indictment contained an enhancement paragraph alleging a prior conviction for aggravated robbery. The date of that conviction was September 14, 1995. Appellant appealed his conviction, and the Fourteenth Court of Appeals issued a mandate on rehearing affirming the conviction on August 6, 1998.

■ For enhancement purposes, when the mandate of the appellate court issues affirming the trial court's judgment, the date to be used in determining the finality of the trial court's judgment is the date the trial court's judgment was signed, not the date of the appellate court's mandate. *Rener v. State*, 416 S.W.2d 812, 814

(Tex.Crim.App.1967); *Caballero v. State*, 725 S.W.2d 776, 778 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd). We find appellant's conviction was final on September 14, 1995; therefore, the evidence was legally sufficient to support a finding of true to the enhancement paragraph.

We overrule appellant's eleventh and twelfth points of error.

### VI. Jury Charge Applying the Law on Entrapment

In his thirteenth point of error, appellant argues the court erred in overruling his objection to the jury charge, which erroneously applied the law on entrapment to the facts. Appellant contends the charge improperly limited the issue of entrapment to a situation in which the informant is "specifically" instructed to entrap appellant.

Counsel made the following objection to the jury charge:

I object to the proposed jury charge, specifically the page regarding entrapment, the instructions on entrapment, as proposed it reads: Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant committed the offense of possession with intent to deliver a controlled substance as alleged, but you further believe or you have a reasonable doubt thereof that he was induced to do so by Trent Broussard, a law enforcement officer and/or John Barnes, who was a law enforcement agent, to-wit, an informant acting under specific instruction from police agents to entrap the defendant by persuasion or other means likely to cause persons to commit the offense and that such conduct of said Trent Broussard and/or John Barnes did not merely afford the defendant an opportunity to commit the offense, if any, you will find the defendant not guilty.

I object to that proposed wording. It is after 'to-wit, an informant acting under,' I would strike the word 'specific' and just leave, 'instructions from police

agents by engaging in conduct which would likely cause a person to commit the offense,' and then continue on, 'comma, and that such conduct of said Trent Broussard or John Barnes did not merely afford the defendant an opportunity to commit the offense, if any, you will find the defendant not guilty.'

The control or instruction from a police officer to his informant which would constitute entrapment may be of a specific or general nature. *Rangel v. State*, 585 S.W.2d 695, 699 (Tex.Crim. App.1979). General control might arise with an experienced informant who "set[s] up" people to make cases. *Id.* In such a situation, no specific instruction to the informant is required even though the informant is under the control of a law enforcement officer. *Id.*

As to Barnes, there is no evidence he was a law enforcement agent over whom Broussard exercised general control. Barnes testified that this was the first time he had ever been an informant. Barnes testified that he was not paid for being an informant, was not promised anything by the DEA or the prosecutor, but that the judge could take his being an informant into consideration when sentencing him for a felony drug possession charge. Barnes testified he had daily contact with the DEA. There was no evidence Barnes had any type of general authority to make his own cases. *See Soto v. State*, 681 S.W.2d 602, 604 (Tex.Crim.App.1984) (holding general control might arise when an informant becomes "experienced" and realizes how to set up people to "make cases"). Appellant was not entitled to a general agent charge. We find the trial court did not err in overruling counsel's objection to the jury charge.

We overrule appellant's thirteenth point of error.

### VII. Jury Instruction on Accomplice Witness

In his fourteenth point of error, appellant contends the court erred when it did

not instruct the jury on accomplice witness testimony.

 We have found there was no reasonable probability that the result of the trial would have been different if the omitted instruction had been submitted to the jury, so the error was not sufficient to undermine confidence in the outcome of the trial.

We overrule appellant's fourteenth point of error.

We affirm the judgment.

COHEN, J., concurred on denial of appellant's motion for rehearing en banc.

COHEN, Justice, concurring on denial of appellant's motion for rehearing en banc.

I concur in the denial of appellant's motion for rehearing en banc.

In appellant's ground for rehearing number three, he contends the panel erred in overruling his points of error 11 and 12, wherein the panel held that for enhancement purposes, the date to be used in determining the finality of a prior conviction on a judgment that has been appealed and affirmed is the date of the trial court's judgment, not the date of the mandate. For that holding, we relied upon *Rener v. State,* 416 S.W.2d 812, 814 (Tex.Crim.App. 1967), and *Caballero v. State,* 725 S.W.2d 776, 777–78 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd).

Appellant contends, and I agree, that this holding directly conflicts with *State v. Perez,* 948 S.W.2d 362, 364 (Tex.App.—Eastland 1997, pet. ref'd), in which the Eastland Court of Appeals refused to follow our holding in *Caballero* and instead relied on *Jones v. State,* 711 S.W.2d 634 (Tex.Crim.App.1986), *Carter v. State,* 510 S.W.2d 323 (Tex.Crim.App.1974), and *Arbuckle v. State,* 132 Tex.Crim. 371, 105 S.W.2d 219 (1937), to reach the opposite result. Those cases do hold as appellant urges us to hold. Thus, there is a conflict on this significant issue, both among the courts of appeals, *i.e.,* *State v. Perez* and *Caballero v. State,* and also among the Court of Criminal Appeals's decisions on the issue, *Rener* on one hand and *Jones, Carter,* and *Arbuckle* on the other. The *Perez* case was an opportunity to resolve this conflict, but it was not resolved. This case presents another opportunity for the Court of Criminal Appeals to do so.

Appellant moved for rehearing to the panel and the en banc Court.

The panel denied appellant's motion for rehearing without opinion.

A majority of the Justices of the Court voted to deny appellant's motion for rehearing en banc.