Opinion issued December 22, 2005











 
In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-04-00465-CR
 __________
 
DERON GRAYSON CLARE, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause No. 959654
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Deron Grayson Clare, guilty of the offense of being a
felon in possession of a firearm, enhanced with two prior felony convictions. 
Appellant pled true to the enhancement paragraphs, and the trial court sentenced him
to 50 years in prison. In four points of error, appellant contends that (1) the evidence
is factually insufficient to show that he exercised care, custody, and control of the
firearm; (2) the trial court erred in failing to instruct the jury on the accomplice
witness rule; and (3) he received ineffective assistance of counsel when his attorney
failed to request a jury instruction on the testimony of an accomplice witness and
allowed hearsay testimony. We affirm. 
                                                        Background
          Officer Farquhar testified that, at approximately 3 a.m. on August 26, 2003, he
was in a marked car patrolling an area known for drug trafficking when he noticed
two cars, facing in opposite directions, stopped in the middle of the street. He
approached the cars, and, when he turned on his overhead lights, the two cars “took
off quickly” in opposite directions. Officer Farquhar testified that he followed one
of the cars, which stopped a short distance away. While he was sitting in his squad
car checking the car’s license plate on his computer, the driver of the car got out of
the car “immediately” and approached the police car. The driver was in a “very
excited state” and was “flailing his arms.” Officer Farquhar testified that it is
“atypical” for someone to react in this way, and he was concerned for his safety. He
told the driver, whom he knew by name and sight to be appellant, to get back in the
car, and he radioed for back-up. Once the additional officers arrived, Officer
Farquhar approached the car and asked appellant for his identification and proof of
insurance. When he was unable to present either document, appellant was arrested
and placed in the back of Officer Farquhar’s squad car.
          Officer Farquhar testified that he then went to the passenger in the car,
Jonathan Keegan, who was “extremely nervous” and perspiring. Keegan volunteered
that there was a gun under the front passenger seat of the car. Officer Farquhar said
that he could see the butt of a gun in plain view under the seat. He retrieved the .44
magnum revolver and found it to be fully loaded with hollow point bullets.


 Officer
Farquhar testified that appellant was known to carry a large caliber handgun. 
Q.Do you have of your own personal knowledge that he is known
to carry a weapon, a .44 Smith and Wesson?
 
A.I have knowledge from individuals who basically walk around in
that street area–back on Thompson that–and prior to this
particular engagement with the defendant–had told me on
numerous occasions that this defendant was known to carry a
large caliber handgun.

          Keegan testified that he got into the right passenger side of a car driven by
appellant. Shortly after getting into the car, he saw police lights. Keegan testified
that, after they were stopped, appellant told him to reach under his seat and “hand me
that under your seat.” Appellant said, “my boy left his stuff in the car.” Keegan
testified that he thought appellant was talking about drugs until appellant said, “my
boy left his piece in the car.” Keegan then knew that appellant was referring to a
firearm. Keegan did not reach under the seat. After appellant got out of the car,
Keegan told the police about the gun under the seat. Keegan testified that the officer
told him that he knew that the gun was appellant’s because he had “been getting calls
and complaints that [appellant had] been packing a big and large firearm.”
          Neither appellant nor Keegan, both felons, admitted to ownership of the gun,
and both were arrested for the offense of being a felon in possession of a firearm.
                                                         Sufficiency
          In his first point of error, appellant argues that the evidence is factually
insufficient to show that he exercised care, custody, or control of the firearm.



Standard of Review
          In a factual-sufficiency review, we view all of the evidence in a neutral light,
and we will set the verdict aside only if the evidence is so weak that the verdict is
clearly wrong and manifestly unjust, or the contrary evidence is so strong that the
standard of proof beyond a reasonable doubt could not have been met. Escamilla v.
State, 143 S.W.3d 814, 817 (Tex. Crim. App. 2004). The appellate court should not
substitute its own judgment for that of the fact finder. Jones v. State, 944 S.W.2d
642, 648 (Tex. Crim. App. 1996).
Felon in Possession
          A person commits the offense of felon in possession of a firearm if he has been
convicted of a felony offense and possesses a firearm within the five-year anniversary
of his release from confinement following conviction or from supervision under
community supervision, parole, or mandatory supervision, whichever date is later. 
Tex. Pen. Code Ann. § 46.04(a)(1) (Vernon 2005).
          “‘Possession’ means actual care, custody, control, or management.” Tex. Pen.
Code Ann. § 1.07(a)(39) (Vernon Supp. 2005). A person commits a possession
offense only if he voluntarily possesses the prohibited item. See id. § 6.01(a) (Vernon
Supp. 2005); Powell v. State, 112 S.W.3d 642, 644 (Tex. App.—Houston [1st Dist.]
2003, pet. ref’d). “Possession is a voluntary act if the possessor knowingly obtains
or receives the thing possessed or is aware of his control of the thing for a sufficient
time to permit him to terminate his control.” Tex. Pen. Code Ann. § 6.01(b); Powell,
112 S.W.3d at 644.
          When a defendant’s possession of contraband is not exclusive, the State may
prove knowing possession by evidence affirmatively linking the defendant to the
contraband. Hawkins v. State, 89 S.W.3d 674, 677 (Tex. App.—Houston [1st Dist.]
2002, pet. ref’d) (applying affirmative links analysis to offense of possession of
firearm by felon). An affirmative link may be established through direct or
circumstantial evidence. Powell, 112 S.W.3d at 644. Some non-exhaustive factors
that may affect the determination of an affirmative link include whether the
contraband was (1) in a car driven by the accused, (2) in a place owned by the
accused, (3) conveniently accessible to the accused, (4) in plain view, or (5) found in
an enclosed space. Gilbert v. State, 874 S.W.2d 290, 298 (Tex. App.—Houston [1st
Dist.] 1994, pet. ref’d).
Possession
          To negate the finding that he was in possession, appellant relies on the facts
that he was never found to have exclusive possession of the firearm, the firearm was
located under the passenger’s seat, his fingerprints were not found on the gun, and
someone else had gotten out of the car before Keegan got into the car.
          The fact that there was another occupant of the vehicle does not preclude
appellant from being in possession of the firearm. When there is not exclusive
control, then the State must show an affirmative link. See Brown v. State, 911 S.W.2d
744, 747 (Tex. Crim. App. 1995). Keegan testified that appellant asked him to get
the “piece” from under the seat. Officer Farquhar testified that appellant (1) was the
driver of the car, (2) “took off quickly” when he saw the police car, (3) was known
for carrying a large firearm, and (4) acted “atypically” when he was stopped. 
Furthermore, the firearm was tucked under the passenger seat in plain view, within
appellant’s reach. These factors are sufficient to show an affirmative link. We hold
that the evidence is not so weak that the verdict is clearly wrong and manifestly
unjust, or the contrary evidence is so strong that the standard of proof beyond a
reasonable doubt could not have been met. See Escamilla, 143 S.W.3d at 821.
          We overrule appellant’s first point.
Accomplice Witness
          In his second point of error, appellant contends that the trial court erred in
failing to instruct the jury on the accomplice-witness rule.
Charge 
          Usually, a defendant must object to an error in order to raise the issue on
appeal. Claxton v. State, 124 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2003,
pet. ref’d). The court may conclude there is error, however, even without an
objection, if the error involves issues “upon which a district court has a duty to
instruct without a request or objection from either party.” Id. (citing Posey v. State,
966 S.W.2d 57, 62 (Tex. Crim. App. 1998)). When a witness who is an accomplice
as a matter of law gives testimony to which article 38.14 applies, the statutorily
required instruction is “law applicable to the case” within the meaning of article
36.14.


 Goodman v. State, 8 S.W.3d 362, 364 (Tex. App.—Austin 1999, no pet.).          A prosecution witness who is indicted for the same offense as the defendant is
an accomplice witness as a matter of law. Herron v. State, 86 S.W.3d 621, 631 (Tex.
Crim. App. 2002). “If a prosecution witness is an accomplice witness as a matter of
law, the trial court is under a duty to instruct the jury accordingly. Failure to do so
is error.” Id.
Error
          In determining whether to reverse a conviction due to a jury charge error, there
is a two-step process. First we must determine whether there is any error in the
charge. Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986). 
          Keegan, who testified for the State, was an accomplice because he was charged
with being a felon in possession of a firearm along with appellant. See Herron, 86
S.W.3d at 631. Moreover, Keegan was an accomplice witness; thus, the trial judge
had a duty to instruct the jury that his testimony implicating appellant should be
viewed with a measure of caution. See Blake v. State, 971 S.W.2d 451, 455 (Tex.
Crim. App. 1998). Defense counsel did not request that an accomplice-witness rule
instruction be given, and the trial court did not instruct the jury, sua sponte, that
accomplice witness testimony must be corroborated. The trial judge’s failure to do
so was error.
Harm
          Once error is established, we must then determine whether sufficient harm was
caused by the error to require reversal. Arline, 721 S.W.2d at 351. When an
accomplice witness testifies, his testimony must be corroborated by other evidence. 
Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). In determining whether
there is “other evidence,” a court must “eliminate all accomplice evidence and
determine whether the other inculpatory facts and circumstances in evidence tend to
connect appellant to the offense.” McDuff v. State, 939 S.W.2d 607, 612 (Tex. Crim.
App. 1997). “The non-accomplice evidence does not have to directly link appellant
to the crime, nor does it alone have to establish his guilt beyond a reasonable doubt;
but rather, the non-accomplice evidence merely has to tend to connect appellant to the
offense.” Id. at 613.
          In Herron v. State, the Court of Criminal Appeals stated:
The instruction merely informs the jury that it cannot use the accomplice
witness testimony unless there is also some non-accomplice evidence
connecting the defendant to the offense. Once it is determined that such
non-accomplice evidence exists, the purpose of the instruction is
fulfilled and the instruction plays no further role in the factfinder’s
decision-making. Therefore, non-accomplice evidence can render
harmless a failure to submit an accomplice witness instruction by
fulfilling the purpose an accomplice witness instruction is designed to
serve. 

Herron, 86 S.W.3d at 632. The harmless error analysis for the omission of the
accomplice-witness rule should be flexible taking into account the “existence and
strength of any non-accomplice evidence and the applicable standard of harm.” Id. 
          The degree of harm will depend on whether the error was preserved. Id. For
an error that was not preserved, as here, the defendant must have suffered egregious
harm. See Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). The
judgment shall not be reversed unless the error appearing from the record was
calculated to injure the rights of the defendant or unless it appears from the record
that the defendant did not have a fair and impartial trial. Id. 
          In determining whether the error was harmful and reversal is required, an
evidentiary review must be conducted, a review of any part of the record as a whole
that may illuminate the actual, not just theoretical, harm to the accused. Id. at 174. 
For this review, the presence of actual harm must be analyzed in light of the entire
jury charge, the state of the evidence including the contested issues and weight of the
probative evidence, the argument of counsel, and any other relevant information
revealed by the record as a whole. Id. 
          Trial counsel did not object to the trial court’s failure to include an accomplice
witness instruction. Accordingly, appellant must show that he suffered egregious
harm, namely that, without the accomplice-witness testimony, the evidence was so
unconvincing to “render the State’s overall case for conviction clearly and
significantly less persuasive.” Saunders v. State, 817 S.W.2d 688, 692 (Tex. Crim.
App. 1991). 
          Appellant argues that he suffered egregious harm when the accomplice-witness
instruction was omitted because the non-accomplice evidence did not show that he
knew the firearm was in the car or that he exercised control over it. 
          Here, the non-accomplice evidence consisted of Officer Farquhar’s testimony
that (1) appellant was the driver of the car, (2) the firearm was in plain view under the
passenger seat, (3) the firearm was within appellant’s reach, (4) appellant had the
reputation for carrying a large caliber firearm, (5) appellant was acting atypically, and
(6) appellant “took off quickly” when he saw the police car. This non-accomplice
evidence “tends to connect” appellant to the offense. See McDuff, 939 S.W.2d at 612. 
The non-accomplice testimony thus rendered harmless the “failure to submit an
accomplice witness instruction by fulfilling the purpose an accomplice witness
instruction is designed to serve.” Herron, 86 S.W.2d at 632. Furthermore, if the
instruction had been given, the evidence is not so weak and unconvincing that the
jury would have found the State’s case significantly more persuasive. See Saunders,
817 S.W.2d at 692. Appellant failed to show that he suffered egregious harm and
thus the error is harmless.
          We overrule appellant’s second point or error.
Ineffective Assistance of Counsel
          In his third and fourth points of error, appellant argues that he received
ineffective assistance of counsel when his attorney failed to request a jury instruction
on the accomplice witness testimony from Keegan and when he allowed hearsay
testimony.
Standard of Review
          In order for an appellant to prevail on an ineffective assistance of counsel
claim, the appellant must show: (1) counsel’s performance was so deficient that he
was not functioning as acceptable counsel under the Sixth Amendment and (2) but
for counsel’s error, the result of the proceedings would have been different. 
Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Gamble
v. State, 916 S.W.2d 92, 93 (Tex. App.—Houston [1st Dist.] 1996, no pet.). It is
appellant’s burden to prove that he had ineffective assistance of counsel and that the
challenged action was not a part of the defense strategy. Gamble, 916 S.W.2d at 93. 

Jury Instruction
          In his third point of error, appellant contends that he “received ineffective
assistance of counsel when his attorney failed to request a jury instruction on the
testimony of an accomplice witness.”
          The failure to request a jury instruction on accomplice witness testimony may
constitute ineffective assistance of counsel under some circumstances. Beal v. State,
35 S.W.3d 677, 683 (Tex. App.—Houston [1st Dist.] 2000), rev’d on other grounds,
91 S.W.3d 794 (Tex. Crim. App. 2002). When testimony is adequately corroborated
by other evidence, there is no reasonable probability that the result of the trial would
have been different “if the omitted instruction had been submitted to the jury.” Beal, 
35 S.W.3d at 684 (holding that accomplice witness’s “testimony was adequately
corroborated by other evidence; therefore, we find no reasonable probability that the
result of the trial would have been different if the omitted instruction had been
submitted to the jury”).
          Because we have already held that the failure to submit an accomplice-witness
instruction was rendered harmless by the non-accomplice witness testimony,
appellant cannot meet the second prong in Strickland—but for counsel’s error, the
result of the proceedings would have been different. See Strickland, 466 U.S. at 687,
104 S. Ct. at 2064.
          We overrule appellant’s third point of error.
Hearsay
          In his fourth point of error, appellant contends that he “received ineffective
assistance of counsel when his attorney allowed hearsay testimony which provided
the only corroborating evidence of appellant’s guilt.” Specifically, appellant
complains of the following testimony when Officer Farquhar testified that appellant
was known to carry a large caliber handgun.
Q.Do you have of your own personal knowledge that he is known
to carry a weapon, a .44 Smith and Wesson?
 
A.I have knowledge from individuals who basically walk around in
that street area–back on Thompson that–and prior to this
particular engagement with the defendant–had told me on
numerous occasions that this defendant was known to carry a
large caliber handgun.

There is a “strong presumption that defense counsel’s conduct falls within the wide
range of reasonable, professional assistance . . . and appellant must overcome this
presumption.” Lagaite v. State, 995 S.W.2d 860, 864 (Tex. App.—Houston [1st
Dist.] 1999, pet. ref’d). 
          Appellant’s trial counsel cross-examined Officer Farquhar about appellant’s
reputation for carrying a large weapon.
Q.Mr. Farquhar, you stated earlier in your testimony that you knew [appellant] to carry a gun?
 
A.I knew from statements from other people in the neighborhood that [appellant] was known to carry a weapon, yes.
 
Q.Okay. And when you approached him, removed him from - - well,
the first thing that you said to him was can you [sic] see your driver’s license and proof of insurance?
 
A.Yes, sir. That’s typically what I respond with on traffic stop.
 
          Q.      It wasn’t I’m going to pull him out of the car because I
know that this man is known for carrying a gun?
 
A.No.
 
Q.I wasn’t - - you weren’t concerned about that?
 
          A.      I was concerned for officer safety because the defendant
quickly exited the vehicle and in a very excited manner and
started approaching my patrol car. I was concerned about
that. As far as, you know, immediately pulling him out and
arresting him, no. 

The State then called Houston Police Officer Kivela to testify regarding his role as
the back-up officer on the scene. On cross-examination, appellant’s trial counsel
questioned Officer Kivela about how he would react if he stopped someone who had
a reputation of carrying a weapon.
Q.If you were to conduct a traffic stop, pull somebody over that you knew was known to carry a gun, what would you do? How would
you handle that situation?
 
A.Well, I’d handle it as I do every traffic stop, with officer safety in mind.
 
Q.So, if you knew someone was - - had a reputation for carrying a gun with them, you’d be a little bit more on edge, correct, a little bit more alert?
 
A.Probably so.
 
Q.You probably wouldn’t ask them to search through their glove box for driver’s license or proof of insurance. Isn’t that fair to
say?
 
A.I’d probably have to do that. I mean, I’d just be more vigilant maybe.
 
Q.You wouldn’t want to give someone an opportunity to be
reaching around their [sic] car grabbing things if you knew that
they [sic] carried a gun; isn’t that correct?
 
A.Not really. But there’s certain things that have to be done. I
mean, if I knew for a fact that there was a gun in there, that would
be a different case rather than a suspicion.
 
Q.So, if you knew someone had a gun in their [sic] car, you
wouldn’t treat it any differently than a speeding ticket?
 
A.Well, if I knew 100 percent that there was a gun in the car - - someone actually told me yes, there’s a gun in that car right there,
that - - that would probably be a little different.

Finally, during closing argument, appellant’s trial counsel again referenced Officer
Farquhar’s testimony regarding appellant’s reputation for carrying a gun.
. . . [Officer Farquhar] said he’s known to have a gun. Of course, he’s
going to say that. These officers have been witnesses in cases before. 
They’ve got to try to make the case.
 
If he knows - - common sense will tell you if you’re a police officer and
you know someone’s going to have a gun or there’s a high likelihood of
having a gun in the car, are you really going to let them [sic] have the
opportunity to search through their [sic] glove box, look for their [sic]
driver’s license and proof of insurance? I wouldn’t. And I don’t think
an officer would either if he really knew that that person was known to
carry a gun.

It appears from the record that appellant’s trial counsel may have intentionally
allowed the hearsay testimony into evidence in an apparent attempt to discredit
Officer Farquhar’s credibility.    Accordingly, there is nothing in the record that
supports the idea that appellant’s trial counsel was ineffective when he failed to
object. Appellant has not overcome the presumption that his counsel’s failure to
object was a part of trial strategy. See Gamble, 916 S.W.2d at 93. 
          We overrule his fourth point of error.
Conclusion
          We affirm the judgment of the trial court.
 
                                                                        George C. Hanks, Jr.
                                                                        Justice

Panel consists of Justices Taft, Keyes, and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).