

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBER 13-07-170-CR

JOHN SHEDDEN,                                                        Appellant,

v.

THE STATE OF TEXAS,                                                  Appellee.

## NUMBER 13-07-409-CR

NICOLE MONTIGNANI,                                                   Appellant,

v.

THE STATE OF TEXAS,                                                  Appellee.

On appeal from the 117th District Court of Nueces County, Texas.

# O P I N I O N

**Before Chief Justice Valdez and Justices Yañez and Benavides**
**Opinion by Justice Benavides**

Appellants, John Shedden and Nicole Montignani, appeal their convictions for possession of more than four grams but less than 200 grams of methamphetamine, with the intent to deliver, and possession of more than four grams but less than 200 grams of cocaine. TEX. HEALTH & SAFETY CODE ANN. § 481.115 (a), (f) (Vernon 2003). Both parties were indicted by a single indictment, but the trial court severed the cases for trial. After a jury trial, Shedden was found guilty of both charges. He was sentenced to 40 years' imprisonment and fined $75,000 fine for possession with intent to distribute methamphetamine. Shedden was further sentenced to 25 years' imprisonment and fined $5,000 for possession of cocaine. After her separate jury trial, Montagnini was also found guilty of both charges. She was sentenced to 25 years' imprisonment and fined $25,000 fine for possession with intent to distribute methamphetamine, and she was sentenced to 10 years' imprisonment and fined $10,000 for possession of cocaine.

On appellants' motion, we consolidated the cases for appeal. By their first two issues, appellants argue that (1) the trial court abused its discretion and violated their Sixth Amendment right to confront the witnesses against them by denying their motion to discover the identity of the State's informant, and (2) the trial court erroneously denied their motions to suppress evidence obtained as a result of an illegal search. Individually, Montignani also argues that the trial court erroneously admitted extraneous offense evidence. We affirm.

## I. Background

Shedden and Montignani are husband and wife. On June 1, 2006, a search warrant was signed providing for a search at 5613 Tanglewood, Corpus Christi, Texas, where

Shedden and Montignani reside. The search warrant was supported by an affidavit submitted by Officer Steve Day of the Corpus Christi Police Department. The warrant affidavit states:

> On May 30, 2006, your affiant received information from a reliable and credible informant, whose name will not be revealed for security reasons, that said informant had been inside the suspected place within the past forty eight (48) hours. The informant told your affiant that the suspected parties were selling methamphetamine from the suspected place. While inside the suspected place, said informant observed the above suspected parties to be in possession of a quantity of methamphetamine. Your affiant believes this informant to be reliable and credible for the following reasons: the informant has given information to your affiant that has led to the seizure of illegal narcotics and arrest of narcotics violators. The informant has made purchases in the past of methamphetamine under the supervision of the affiant. The informant is familiar with the appearance of methamphetamine. An investigation of suspected party (1) [Shedden] revealed arrests for possession of a controlled substance. The suspected party (1) is currently on parole for a possession of a controlled substance conviction. An investigation of the suspected party (2) [Montignani] revealed an arrest for hindering apprehension and a suspect in possession of a controlled substance.

The Corpus Christi Police Department executed the search warrant on June 2, 2006, the day after its issuance. During the search, officers discovered large quantities of cocaine and methamphetamine. Subsequently, on November 30, 2006, Shedden and Montignani were indicted by a Nueces County grand jury for possession with intent to deliver methamphetamine and possession of cocaine. They were reindicted on January 18, 2007 for the same offenses, except that a repeat felony offender enhancement paragraph was added with respect to Shedden.

Both Shedden and Montignani filed motions to suppress evidence and requested a hearing under *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978) (requiring trial court to hold a hearing if the defendant makes a showing of a deliberate or recklessly made false

3

statement in a warrant affidavit). The motion attached several affidavits from various witnesses who claimed that over the weekend of May 26, 2006, and through the evening of May 30, 3006, Shedden and Montignani were vacationing in San Antonio. Essentially, Shedden and Montignani claimed that because they had been out of town until the evening of May 30, it was impossible for the confidential informant to have been inside their home as alleged in the warrant affidavit. Thus, they argued that Officer Day intentionally, knowingly, or recklessly made a false statement in his warrant affidavit, and there was no probable cause to support the search warrant. Shedden and Montignani also filed motions to require the State to disclose the identity of the confidential informant who supplied the information that Officer Day used to support his search warrant affidavit. *See* TEX. R. EVID. 508(c)(3).

## A. Hearing on Motion to Suppress and to Disclose Identity of Informant

On January 29, 2007, the trial court held a hearing on the motions to suppress and the motions to reveal the confidential informant's identity. Officer Day testified that he was an officer with the Corpus Christi Police Department. He stated that he had worked with informants for over six years. Officer Day stated that on May 30, 2006, he was at work and received a phone call from one of his informants.

The trial court inquired how many times Officer Day had used this particular informant, and Officer Day stated that the informant had "done three—three or more buys for us in the past and has also provided information that we've used for—in the past to obtain a search warrant and make an arrest." Officer Day clarified that he had known the informant for a year prior to the date of the search warrant, that he had checked the informant's criminal record, and that he was not aware of any prior convictions the

4

informant had or of any felony cases pending against the informant. He testified that after receiving the information, he did not conduct any other investigation to corroborate the information. He testified that he did not conduct a controlled buy between this informant and Shedden because he believed that the informant was reliable.

Furthermore, he stated that the informant was paid by the F.B.I. after the police recovered narcotics at the Tanglewood residence. He testified that the informant was a friend of Shedden and Montignani. He was not aware of any grudge that the informant had against them. Officer Day stated that at the time he received the information from the informant, he had no reason to believe that the information the informant provided was false. He testified that he had no reason to believe that the informant had misled him in the past, and he rated the informant as "better than average."

The informant told Officer Day that he[1] had been inside the residence located at 5613 Tanglewood, which was the home of Shedden and Montignani, and that he observed them to be in possession of a gallon-sized Ziploc bag that was approximately half full of methamphetamine. Officer Day testified that after receiving the phone call on May 30, he and his supervisors decided to prepare an affidavit and seek a search warrant for the residence. He testified that he made the decision "that night." He prepared the affidavit for the search and arrest either in the evening or late night of May 30, or the next day, on May 31. After he prepared the affidavit, his supervisor reviewed it, and Officer Day presented the affidavit to Judge Flores on June 1, 2006. The officers executed the warrant on June 2, 2006.

---

[1] We will refer to the informant using a masculine identifier, for ease of reference. The gender of the informant was not disclosed on the record, in order to protect the informant's identity.

Shedden and Montignani's counsel questioned Officer Day extensively about the exact time frame that the informant had allegedly been inside the residence. On direct examination, Officer Day clarified the time frame for receiving the information from the informant:

Q: Okay. So, on May 30th you say in your affidavit that you received information 48 hours prior, okay? Does that include the May 30th date, the 48 hours that we're talking about?

A: Yes, it does.

. . . .

Q: Did you present your affidavit and search warrant to the Judge on June 1st?

A: Yes, I did.

Q: Okay. Now, let's talk about the 48-hour time frame. Why do you use that?

A: I—I am not aware of like a time frame that's in the Code of Criminal Procedure. We use 48 hours because it's a—you know, the information would be current and not stale, so we use 48 hours. I know of officers that have used 72 hours, but I—48 hours is what we like to use and so we have current information and the information is not termed where, you know, there is nothing at the house, no more drugs, or they are gone or whatever.

Q: Okay. Now, do you also use that 48 hour time period to protect your informant?

A: Yes.

Q: And why is that important?

A: If—if the identity of any informant is, you know, revealed and, you know, for one, their life could be in danger, you know, for two, you're not going to have any informants to help you with other investigations, if you have to give their identity.

On cross-examination, Officer Day testified that the informant had been in the house

6

within 48 hours prior when Judge Flores signed the warrant on June 1, and he clarified that

the informant had been in the home on May 30 in the evening:

> Q: On May 30th you received information from an informant that this person had been in John Shedden's house within the preceding 48 hours, right?

> A: No. The search warrant was—the 48 hours was—let's see here. Can you rephrase that question, please?

> Q: Is it your testimony that the 48 hour period was preceding June 1st at 2:00 in the afternoon, when you went and saw the magistrate?

> A: Yes.

> Q: Oh, Okay. Did the informant specify when they had been inside the home, within a 48 hour period?

> A: Yes.

> Q: When was that?

> A: The—the informant had been inside the home on May the 30th.

> Q: Okay. That's the date, but I asked you a particular time.

> A: It was May the 30th, later in the evening, before midnight.

> . . . .

> Q: Didn't you just testify a second ago that the 48 hour period you were referring to was from June 1st? Didn't you just say that?

> A: From the information, it was established 48 hours prior to the Judge signing the search warrant, June the 1st at approximately 2:19 p.m.

> Q: Okay. So from May the 30th sometime that evening to June the 1st at I believe 2:19 p.m., would it—you would have received the information within 48 hours of the time that you presented the affidavit to the magistrate; is that your testimony?

> A. Yes.

> Q: Okay. But that's not my question, my question is, the affidavit says

7

that you received the information on May 30th, that the—within the preceding 48 hours the informant had been in the home, which would have been from, according to your testimony, if you presented—if you received the information late in the evening of May 30th, then you would go back to late in the evening of May 28th; that would have been 48 hours, right?

A.     No.

Q.     Well, what was the 48 hours preceding May 30th?

A:.    I think I've already testified to that, that it was June the 1st, 2:19 p.m. is when it was signed, so 48 hours prior to that the informant had been inside.

After Officer Day's testimony, Shedden and Montignani called Roy Rogers to testify. Rogers is a mechanic. He stated that he received a call from Shedden and Montignani on May 30 reporting problems with their car. The car was towed to Rogers's repair shop around 5:30 or 6:00 p.m. Rogers testified that Shedden and Montignani did not stay at the repair shop while the car was being repaired. He stated that Shedden and Montignani left the repair shop "not even later than 7 or so."

Montignani then testified. She stated that the weekend prior to May 30 was Memorial Day weekend, and that she and Shedden had been to San Antonio for the weekend. When they were returning on Tuesday, May 30, they had car trouble. Montignani testified that they stopped at an Exxon station in Mathis, Texas. Montignani offered receipts from the Exxon station showing that she bought gas and chocolate milk. Montignani also offered bank records that showed a purchase at the Exxon on May 30 at 5:15 pm. There was also a charge at a Texaco travel center. Montignani testified that their vehicle was picked up at the travel center and towed to Rogers's shop.

Montignani testified that after leaving the shop, she and Shedden went to eat dinner

and then returned home. She could not remember the exact time, but she remembered that it was "really dark" and that they had "missed the news." She stated that she called Cynthia Helton, who had been watching the couple's dog, to tell her that they had returned home and would get the key to their home back from Helton the next day. Montignani testified that they did not have any visitors after they returned home on May 30. She then clarified that she did not admit any visitors, but she did not know if Shedden had any visitors. She admitted it was possible that after she fell asleep, Shedden had a visitor. Shedden did not testify at the hearing.

After the testimony concluded, Shedden's and Montignani's attorneys argued that Officer Day lied in his affidavit because the affidavit stated that the informant had been inside the home within 48 hours prior to May 30, while Officer Day claimed at the hearing that the 48-hour period referred to the 48 hours prior to June 1, when he presented the affidavit to Judge Flores and obtained the search warrant.

The prosecutor pointed out, however, that Officer Day testified that the informant had been in the home on the evening of May 30. The State argued that the defense had not established that Officer Day had made a false statement in the affidavit because the evening of May 30 fell within the 48-hour period, whether the 48 hours is counted back from June 1 or from May 30. The State argued that the defense witnesses did not establish that the informant could not have been in the home on May 30. By all accounts, Shedden and Montignani returned home the evening of May 30.

Shedden and Montignani then asked the trial court to require the State to disclose the identity of the informant or, in the alternative, to hold an *in camera* hearing to question the informant to confirm whether he had actually been inside the residence. The trial court

9

denied the request. Shedden and Montignani objected that the trial court's refusal to require disclosure of the informant's identity violated their right to confront the witnesses against them and their right to "due process." The trial court overruled the objection. The trial court then found that Officer Day did not make any false statements in his affidavit, and it denied the motions to suppress. Montignani moved to sever her case from Shedden's case for trial, and the trial court granted the motion.

**B.      Shedden's Trial**

Shedden's trial commenced on February 13, 2007. Before the jury was seated, Shedden requested that the trial court give a jury instruction in the charge regarding the admissibility of the evidence seized at the Tanglewood residence. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005). Shedden argued that a fact issue existed regarding whether the evidence was illegally obtained, and he was entitled to an instruction to the jury asking it to resolve the factual dispute and, if the jury found that the evidence was illegally obtained, to disregard the evidence. *See id.* The trial court deferred ruling until after all the evidence was presented, but it indicated that if a fact issue existed, Shedden would receive the jury instruction.

The State first called Officer Day to testify. Officer Day testified about the execution of the search warrant on June 2, and the State offered several exhibits into evidence. First, the State offered exhibits 3, 4, and 5, which were photos depicting methamphetamine and marijuana found at the Tanglewood residence. Shedden objected that one of the photos showed pornography, so the trial court redacted a portion of one of the photos. The court then asked, "Does that suffice? Any objections?" Shedden responded, "No."

Later in the testimony, the State offered exhibits 6, 7, and 8, which were photos of

methamphetamine found in a hidden closet in the home. When the State offered the photos into evidence, Shedden affirmatively stated, "No objection, Your Honor." The State also offered exhibits 10, 11, 12, 13, and 14, which were photos of methamphetamine and a digital scale found at the home. Again, Shedden stated, "No objection to those photos, Your Honor."

Next, the State offered a chemical and weight analysis from the Texas Department of Public Safety, which identified the substances found at the home as methamphetamine and cocaine. When the State offered these exhibits into evidence, Shedden affirmatively stated, "No objection."

Finally, the State offered exhibit 17, which was a lock box found in the studio of the house. When the State offered the exhibit into evidence, Shedden stated, "No objection." After the trial court admitted exhibit 17, the following exchange occurred:

| | |
|---|---|
| Defense Counsel: | Your Honor, I'm sorry. If I may, Your Honor, the—I would just like to interject one objection and that would be to the lawfulness of the search that resulted in the seizure of this evidence. |
| The Court: | I understand your objection. |
| Defense Counsel: | So— |
| The Court: | For the record, it's overruled. |
| Defense Counsel: | I don't want to waive that issue of the lawfulness of the search but— |
| The Court: | I understand. |
| Defense Counsel: | —that objection to all of these exhibits that were seized as to the legality of the search itself, but other than that, as far as chain of custody or— |
| The Court: | You have no objection? |

11

| | |
|---|---|
| Defense Counsel: | —or on vindication—I don't have an objection to what was seized.  My only objection is to the search that resulted. |
| The Court: | I understand your objection and that objection has previously been denied or overruled and I'm going to stay with that ruling, but you have the right to make that objection. |

Shedden then obtained a running objection to all the evidence that was seized as a result of the search.

Shedden's counsel cross-examined Officer Day extensively about his use of a confidential informant when preparing the warrant affidavit.  Officer Day testified that the informant was not under indictment or pending prosecution. He read from the warrant affidavit, which was admitted into evidence.  On cross-examination, Shedden's counsel asked numerous questions about the 48-hour period.  Officer Day testified that timing was being taken out of context.

Officer Day tried to explain that the 48-hour period ran from June 1, when he presented the affidavit.  On re-direct, Officer Day again explained that whether the 48-hour period was counted back from June 1 or May 30, the evening of May 30 was included in that time frame, and the informant told him that he had been inside Shedden's home on May 30.

After the State rested, Shedden moved for a directed verdict and also notified the court that he intended to call a defense expert on search and seizure law.  The trial court said that it would not allow the expert to testify.  The court then stated, "But you forgot that we've already had a preliminary ruling on the validity of whether or not the affidavit was false and/or whether there was a reckless disregard for the truth.  That is preserved for an

appeal, if an appeal is necessary."

Shedden then called Cynthia Helton to testify. She stated that she watched Shedden and Montignani's dog in May 2006. She picked up the key on May 25, 2006. She testified that Shedden and Montignani were out of town from May 28, 2006 to May 30, 2006. Helton stated that Shedden and Montignani called her on May 30 to report that they had returned home. She testified that she had been at their home at 7:00 p.m. to feed the dog and that Shedden and Montignani were not home. She could not recall exactly what time she received the phone call, but she stated it was probably after 10:00 p.m. She testified that she returned the key on May 31. She did not know if Shedden and Montignani had any visitors on May 30.

Roy Rogers also testified. He stated that he owns an auto repair shop. He testified that he received a call from Shedden and Montignani at 5 or 6 p.m. on May 30, informing him that their car had broken down in Mathis. He testified that his employees towed the car to the repair shop. At trial, Rogers could not remember whether Shedden and Montignani waited for their car to be repaired or left the shop.

Shedden then testified. He stated that he and Montignani, his wife, left Corpus Christi on May 28 to go to Dallas to visit Montignani's parents. He stated that they began having car problems in San Antonio, so they stayed at a friend's house for the weekend. He testified that he worked on the car in San Antonio, and the couple decided to return to Corpus Christi on May 30. He testified that the couple pulled over in Mathis and called Rogers. He testified that the car was towed to Rogers's shop in Corpus Chrsti. He stated that he and Montignani waited for the car to be repaired, and they drove the car home that night. He testified that they returned home after 10:00 p.m., unloaded their car, fed their

13

dog, and went to bed. He testified that there were no visitors at their house on May 30. Shedden testified that it was impossible for an informant to have seen drugs in his home on May 30 because he did not admit any visitors to the house and because he did not have any drugs at the time.[2]

The trial court instructed the jury on the elements of the crimes alleged. It then provided an instruction on the law of search and seizure and instructed the jury to disregard evidence that it found was obtained in violation of the law. The jury found Shedden guilty of all charges. The trial court then sentenced Shedden to 40 years' imprisonment and imposed a $75,000 fine for possession with intent to distribute methamphetamine, and 25 years' imprisonment and a $5,000 fine for possession of cocaine.

## C.  Montignani's Trial

At a pre-trial hearing on June 18, 2007, Montignani pursued a motion in limine seeking to prevent the jury from hearing testimony from two witnesses, Grant Lockett and Debra Codney. The State intended to call these witnesses to testify about their experience with Montignani and her connection to the use and sale of methamphetamine. Montignani argued that she did not receive sufficient notice that these witnesses would testify and that their testimony was barred under Texas Rules of Evidence 403 and 404 as extraneous offense evidence. The trial court stated that it would restrict Lockett's and Codney's

---

[2] Shedden admitted, however, that he was in possession of drugs on June 2 when the search warrant was executed and that the drugs had been delivered earlier that day. He denied that he intended to deliver the methamphetamine, but unequivocally admitted that he was in possession of the methamphetamine and cocaine, as alleged in the indictment. The State does not argue that this admission waived Shedden's arguments on the suppression of the evidence obtained as a result of the search or on requiring the State to disclose the identity of the informant. *See LeDay v. State*, 983 S.W.2d 713, 717-20 (Tex. Crim. App. 1998) (holding defendant did not waive trial court's error in denying motion to suppress by testifying to possession of drugs during guilt/innocence phase).

testimony to events that occurred after the year 2000, but that extraneous offenses after that date would be allowed in evidence.

Montignani's trial commenced on June 19, 2007. Officer Day testified. He stated that on May 30, 2006, he received a phone call in the evening hours from a confidential informant. Officer Day testified that the information that this informant had given in the past had been reliable and credible and that search warrants had been prepared in the past based on information the informant provided. Officer Day clarified that he had executed only one search warrant based on this informant's information prior to the warrant in this case.

Officer Day stated that he received the call from the informant at approximately 11:00 p.m. The informant told him that he was in the home on May 30. Montignani offered the affidavit in evidence, which stated that "on May 30th, 2006, [Officer Day] received information from a reliable and credible informant, whose name will not be revealed for security reasons, that said informant had been inside the suspected place within the past 48 hours." Officer Day explained that he received the information from the informant on May 30, but in the affidavit, the 48-hour period referred to the 48 hours prior to when he presented the affidavit to the judge on June 1.

Although at the hearing on the motion to suppress, Officer Day testified that the informant had not performed a controlled-buy from Shedden or Montignani, he stated at Montignani's trial that the informant did, in fact, engage in a controlled-buy from Shedden. Additionally, Montignani's counsel asked questions about the informant's criminal history. Officer Day stated that the informant did not participate in the offense in this case. He testified that the confidential informant had charges that were dismissed as a result of his

15

help on the case, but he did not specify when that occurred:

| | |
|---|---|
| Defense Counsel: | And in this case, the confidential informant had actually had some felony charges that you guys had dismissed in order for them to—to participate in your investigations; is that correct? |
| Officer Day: | He—he did have a felony case pending. |
| Defense Counsel: | And you dismissed it or you had it dismissed; is that correct? |
| Officer Day: | Yes. |
| Defense counsel: | All right. And so not only is this person somebody that you've helped out on a legal—in a legal way, but you've also paid them; is that correct? |
| Officer Day: | That's correct. |
| . . . . | |
| Defense counsel: | But your CI had a felony arrest, is that correct? |
| Officer Day: | Yes. |

Officer Day testified that he spoke with his supervisor and decided to draft an affidavit for a search warrant. He presented the affidavit to the judge on June 1 and obtained a warrant. The warrant was executed on June 2.

The State offered exhibits 1 through 32, which were photos of the residence that included drugs found on the premises. Montignani objected to all the photos on the ground that they depicted illegally seized evidence. Officer Day explained all the photos and stated that methamphetamine and cocaine were found at the residence. Montignani obtained a running objection based on the illegal search and seizure. The State then

16

offered numerous other exhibits that contained items seized from the home, including the methamphetamine and cocaine.

Officer Ismael Loa then testified. He was present at the search on June 2. The State offered a video that the officers created of the search. Despite his earlier objection to the admission of the results of the search, Montignani's counsel stated, "No objection," when the video was offered into evidence. The video showed the results of the search, including the discovery of methamphetamine and cocaine.

Officer Loa also testified that he had worked with the confidential informant in the past. He said that he had obtained one other warrant based on this informant's reports. Officer Loa confirmed that the informant had a felony pending against him that was dismissed.

FBI Agent Megan Beckett then testified. She was Officer Day's supervisor as part of a drug taskforce. She was present at the execution of the warrant. Montignani questioned her about the confidential informant. Agent Beckett testified that the confidential informant had one case against him that was dismissed. She also testified that the informant had performed a controlled buy in the case.

On cross-examination, Montignani's counsel questioned Agent Beckett about the execution of the search warrant. Counsel asked if Montignani had cooperated with the officers, and Agent Beckett said she had. Counsel then asked: "And didn't [Montignani] tell you that she didn't have knowledge of drugs or money, illegal money in the house?" Agent Beckett said, "Yes." Montignani's counsel also questioned Agent Beckett about Shedden's trial and conviction for possession of the same drugs involved in Montignani's case. Counsel asked, "And [Shedden] also had advised you that this was his deal; right?"

17

Agent Beckett denied being so advised.

The State then called Lockett to testify. Before Lockett testified, Montignani's counsel approached the bench and reminded the court and the prosecutor that the prosecutor had agreed to limit the testimony to acts that occurred after the year 2000. Otherwise, he did not object to the testimony.

Lockett testified that he was currently in federal custody for the sale of methamphetamine. He testified that he met Montignani in 1999 or 2000, and she introduced him to Shedden. Lockett stated that he and Shedden started "doing business" in 2001, and he purchased methamphetamine from Shedden. He testified that he also sold methamphetamine to Shedden on occasion. Lockett testified that he also purchased two ounces of methamphetamine from Montignani on one occasion. Lockett testified that he purchased methamphetamine from Montignani on five or fewer occasions. Montignani's counsel did not object to the extraneous offenses discussed during Lockett's testimony.

Codney THEN testified. She stated that she was currently in federal custody. She stated that she had known Montignani for twelve years. She stated that from the year 2000 until the time of her arrest in 2003, she purchased methamphetamine from Montignani on several occasions. Montignani did not object to the extraneous offenses discussed during Codney's testimony.

After the State rested, Montignani generally reurged her motion to suppress, arguing that the evidence showed that Officer Day intentionally or recklessly included a false statement in the warrant affidavit. Montignani did not, however, specifically direct the court to any new evidence she contended required the court to deviate from its prior ruling on

18

the motion to suppress. The trial court denied the motion.

Montignani called Chris Cunningham to testify. He stated that he was in a band with Shedden, and Shedden informed the band that he would be on vacation from May 28 to June 1, 2006. He stated that he did not go to the Tanglewood residence during that time period.

As did Shedden, Montignani called Helton to testify. She stated that she watched Shedden and Montignani's dog in May 2006. She picked up the key on May 25, 2006. She testified that Shedden and Montignani were out of town from May 28 to May 30, 2006. She fed their dog on May 28, 29, and 30. The last time she went to feed the dog was between 7:30 and 8:30 p.m. on May 30.

She testified that Shedden and Montignani called her on May 30 to report that they had returned home. She stated that she received the call at around 11:00 p.m., but on cross-examination, she clarified that it could have been 10:00 or 10:30 when she received the call. She testified that she returned the key on May 31.

Roy Rogers also testified. He stated that he owns an auto repair shop. He testified that he received a call from Montignani at 4:30 or 5:00 p.m. on May 30, informing him that their car had broken down in Mathis. He testified that his employees towed the car to the repair shop. Rogers testified that Shedden and Montignani waited at the shop for about an hour, or until about 8:15 p.m., but then Shedden and Montignani left. Later, Rogers testified that it could have been as late as 9:00 or 9:15 p.m. when they left the repair shop. The car was delivered to them later that night by Rogers's employee.

Shedden testified on behalf of Montignani. He stated that he and Montignani, his wife, left Corpus Christi on May 28 to go to Dallas to visit Montignani's parents. He stated

19

that they began having car problems in San Antonio, and so they stayed at a friend's house for the weekend. He testified that he worked on the car in San Antonio, and the couple decided to return to Corpus Christi on May 30. He testified that the couple pulled over in Mathis and called Rogers. He testified that the car was towed to Rogers's shop in Corpus Christi. They arrived at the repair shop at about 5:00 or 6:00 p.m.

He stated that he and Montignani waited for the car to be repaired, and they drove the car home that night. He testified that they left the shop at 10:00 p.m., went to Whataburger to eat, and then went home. He testified that they arrived home at 11:00 p.m. He testified that they called Helton to tell her that they had returned home, but there were no visitors at their house on May 30. Shedden admitted that he possessed drugs at the house when the search occurred on June 2, but he asserted that Montignani had no knowledge of the drugs. Shedden stated it was impossible for an informant to have seen drugs in the home on May 30 because he did not have any drugs on that day.

The trial court gave a jury instruction regarding probable cause to search the residence. Nevertheless, the jury found Montignani guilty of both charges. The trial court sentenced her to 25 years' imprisonment and imposed a $25,000 fine for possession with intent to distribute methamphetamine, and 10 years' imprisonment and a $10,000 fine for possession of cocaine.

## II. Waiver of Motions to Suppress and to Disclose Informant's Identity

As stated above, Shedden's and Montignani's first two issues argue that the trial court erred by denying their motions to suppress evidence and, by refusing to disclose the identity of the confidential informant, violated their right to confront the witnesses against them. The State argues that both Shedden and Montignani waived these arguments by

20

affirmatively stating, "No objection," to the State's introduction of the evidence obtained through the search at their trials.

Texas Code of Criminal Procedure article 38.23(a) provides:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005). A defendant who files a pre-trial motion to suppress evidence and obtains a ruling on the admissibility of the evidence need not object every time the evidence is offered at trial to preserve error. *See Moraguez v. State*, 701 S.W.2d 902, 904 (Tex. Crim. App. 1986). "However, when the defendant affirmatively asserts during trial he has 'no objection' to the admission of the complained of evidence, he waives any error in the admission of the evidence despite the pre-trial ruling." *Id.*; *see also Holmes v. State*, 248 S.W.3d 194, 200 (Tex. Crim. App. 2008); *Harris v. State,* 656 S.W.2d 481, 484 (Tex. Crim. App. 1983); *Wilson v. State*, 857 S.W.2d 90, 93 (Tex. App.–Corpus Christi 1993, pet. ref'd).

At Shedden's trial, the State offered numerous exhibits into evidence, which were all the result of the allegedly illegal search, and Shedden's attorney affirmatively stated, "No objection." Under the above authorities, defense counsel's statements to the trial court appear to constitute a waiver of the motion to suppress and the motion to disclose the informant's identity.

However, immediately before trial began, the parties engaged in a lengthy

21

discussion about the suppression issues and the availability of a jury instruction under Texas Code of Criminal Procedure article 38.23. After the apparent waiver, later in the proceeding, Shedden's counsel clarified that he did not intend to waive his objections by stating that he had no objections, and the trial court appeared to understand as much. The trial court then expressly represented to Shedden's counsel that it considered the suppression issue preserved for appeal. Under these circumstances, we hold that the trial court did not construe the "no objection" statements as a waiver of the issues. *See Bouyer v. State*, No. 04-07-00363-CR, 2008 WL 1957910, at *2 (Tex. App.–San Antonio May 7, 2008, no pet.) (mem. op.) (holding that statement, "no objections," did not waive motion to suppress because judge's conduct indicated that he did not consider issue waived).

Montignani's counsel objected to all but one of the exhibits that came into evidence either by specifically objecting to each one on the grounds of the illegal search or by obtaining a running objection to the evidence. Although on one occasion Montignani's counsel stated, "no objection," to the trial court's admittance of a videotape of the search, this statement was made after counsel had already obtained a running objection to the evidence. In these circumstances, we hold that Montignani did not waive her arguments regarding the motion to suppress or the identity of the informant. *See id.; cf. Valdez v. State*, No. 07-03-0014-CR, 2003 WL 22069532, at *2 (Tex. App.–Amarillo Sept. 5, 2003, no pet.) (mem. op., not designated for publication).

## III. Confidential Informant

Shedden and Montignani argue that the trial court abused its discretion by denying their motion to discover the informant's identify, and thereby denied their right to cross-examine witnesses against them. We will address each argument in turn.

22

## A.    Motion to Disclose Identity

The informant's privilege is contained in Texas Rule of Evidence 508. TEX. R. EVID. 508. That rule provides that the government has a privilege to withhold the identity of a confidential informant "who has furnished information relating to or assisting in an investigation of a possible violation of a law." *Id.* at 508(a). The rule, however, contains exceptions. *Id.* at 508(c). In this case, Shedden and Montignani argue that the exception in rule 508(c)(3) required disclosure. It provides:

> If information from an informer is relied upon to establish the legality of the means by which evidence was obtained *and the court is not satisfied that the information was received from an informer reasonably believed to be reliable or credible, it may require the identity of the informer to be disclosed*. The court shall, on request of the public entity, direct that the disclosure be made in camera. All counsel and parties concerned with the issue of legality shall be permitted to be present at every stage of proceedings under this subdivision except a disclosure in camera, at which no counsel or party shall be permitted to be present. If disclosure of the identity of the informer is made in camera, the record thereof shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the public entity.

*Id.* at 508(c)(3) (emphasis added).

The trial court's ruling under this section is reviewed for an abuse of discretion. *Hall v. State*, 778 S.W.2d 473, 474 (Tex. App.–Houston [14th Dist.] 1988, pet. ref'd). "[T]he trier of fact, in this case the trial court, is the exclusive judge of the credibility of the witnesses and the weight to be afforded their testimony." *Id.*; *see also Ashorn v. State*, 802 S.W.2d 888, 892 (Tex. App.–Fort Worth 1991, no pet.)

Shedden and Montignani argue that the trial court abused its discretion by denying their motion to discover the informant's identity, or alternatively, in refusing to hold an *in*

23

*camera* hearing to question the informant. They argue that they made the required initial showing to at least obtain an *in camera* examination of the informant by presenting evidence that the warrant affidavit was false. First, they argue that because they were not at home during most of the 48-hour time period within which the informant claimed to have been inside their home, the affidavit was false, and the identity of the informant was crucial to their motion to suppress. Second, they argue that Officer Day was not a credible witness. They argue that his testimony is inconsistent because the 48-hour period described in the affidavit refers to the two days prior to May 30, while at the hearing he explained that the 48-hour period meant the two days prior to June 1.

In *Lopez v. State*, we addressed a similar fact situation. *See generally* 760 S.W.2d 770 (Tex. App.–Corpus Christi 1998, pet. ref'd). In that case, a police officer investigated Lopez after a confidential informant told him that Lopez possessed cocaine. *Id.* at 771. The informant reported that he had been inside Lopez's home within the 36 hours prior to August 25, 1986. The officer prepared an affidavit, obtained a search warrant, executed the warrant, and found drugs. *Id.* at 771-72.

Lopez moved to suppress the evidence recovered by the search and to reveal the identity of the informant. *Id.* at 772. Lopez argued that the affidavit was not supported by probable cause and that the officer knew the affidavit was false or recklessly disregarded the truth because Lopez had been at home for only a short period of time during the 36-hour-period and had not had any visitors. *Id.* The trial court held a hearing on the motion to suppress. *Id.* Most of the testimony at the hearing on the motion to suppress centered around whether Lopez was at home during the 36-hour period. *Id.* Lopez called witnesses who said he was not home during the majority of the time period, and Lopez personally

24

testified that he was gone most of the day on August 25 and did not return until 6 p.m. *Id.* at 773.

The officer, however, testified that he had successfully used the informant in the past and that he had no reason to disbelieve the information in his warrant affidavit. *Id.* The officer also testified that after he received the tip, he conducted the surveillance on Lopez's home. *Id.* He testified that he saw Lopez coming in and out of the house throughout the afternoon and evening of August 25, and he testified that Lopez was lying about his whereabouts on August 25. *Id.* The trial court denied the motion to suppress and the request to disclose the informant. *Id.*

Lopez argued that by refusing to disclose the informant, the trial court prevented him from demonstrating that the officer manufactured his affidavit. *Id.* We referred to Texas Rule of Evidence 508(c)(3), expressly noting that the trial court's inquiry under this provision is whether "the information was received from an informer reasonably believed to be reliable or credible." *Id.* We held that because the trial court is the trier of fact and the sole judge of the credibility of the witnesses at a *Franks* hearing, the court was entitled to believe the officer's testimony and to disbelieve Lopez's testimony. *Id.* at 774. Thus, the trial court was entitled to question Lopez's whereabouts during the 36-hour-period before surveillance began. *Id.* "Since the court was apparently satisfied that the confidential informant was reliable, we cannot say that it erred in refusing to require a disclosure of the informant's identity." *Id.*

The instant case is nearly identical. Shedden and Montignani presented evidence at the hearing that they were home for all but a few hours of the 48-hour time period within which Officer Day claimed the informant was inside their house. Contrary to their

25

arguments, the evidence they presented was not inconsistent with Officer Day's testimony. Officer Day testified that the informant was in the home on the night of May 30. Whether the 48-hour period is counted back from May 30 or from June 1, the night of May 30 is included within the time period and is consistent with Officer Day's testimony. Furthermore, Officer Day testified that the informant had proved reliable in the past and that he had no reason to doubt the information. The trial court, as the trier of fact, was entitled to believe Officer Day's testimony and find that "the information was reasonably believed to be reliable or credible." *Id.* (quoting TEX. R. EVID. 503(c)(3)).

Nevertheless, Shedden argues that at the hearing on the motion to suppress evidence, Officer Day testified that he was unaware that the informant had any prior felonies or pending charges, but at Shedden's trial, he testified that the informant had a felony dismissed in exchange for cooperating. The testimony at trial did not explain when the informant was charged or when the charges were dismissed in relation to the time that Officer Day executed the warrant affidavit. We fail to see how this demonstrates that Officer Day did not reasonably rely on the informant at the time he executed the warrant affidavit. More importantly, Shedden did not ask the trial court to reconsider his ruling on the motion to suppress after this testimony was elicited and point out the newly revealed "inconsistency." Accordingly, Shedden waived any argument based on this testimony. *See* TEX. R. APP. P. 33.1(a)(1)(A) (stating objection must state "the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context").

Likewise, both parties argue that at the hearing on the motion to suppress, Officer Day testified that the information obtained from the confidential informant was not

26

corroborated by an independent investigation and that there was no controlled-buy between Shedden and the informant.  However, at Montignani's trial, Officer Day testified that he did corroborate the information and that a controlled buy was performed.  Thus, the testimony at Montignani's trial (which occurred after Shedden's trial)  established a discrepancy between Officer Day's testimony at the suppression hearing and his testimony at her trial.

With respect to Shedden's argument, we note that the trial court at Shedden's trial could not have erred in failing to consider this "discrepancy" because no discrepancy had yet materialized.  Thus, the trial court had no opportunity to consider the argument Shedden makes on appeal; accordingly, we may not entertain it on direct appeal.[3] *Whitehead v. State*, 130 S.W.3d 866, 874 (2004).  We reject Shedden's argument.

 With respect to Montignani's argument, we note that although she reasserted her motion to suppress after Officer Day testified, she did not argue that the discrepancy in his testimony merited a reconsideration of the trial court's ruling denying her request to disclose the informant's identity.  Under these circumstances, Montignani waived her argument that the trial court erred in failing to consider the discrepancy in the officer's testimony.  TEX. R. APP. P. 33.1(a)(1)(A).  We reject Montignani's argument.

As a corollary, Shedden and Montignani argue that the trial court should have required the State to disclose the informant's identity at an *in camera* hearing so that the court could explore whether the informant was actually present at their home on May 30.  They argue that a trial court errs when it denies a motion to disclose an informant's identity

---

[3] The record does not reflect whether Shedden challenged the propriety of the warrant by raising the discrepancy in any habeas petition; we therefore do not address the issue.

without conducting the proper inquiry under rule 508, which they assert includes a mandatory in-camera hearing. We disagree.

Shedden and Montignani cite *Heard v. State*, 995 S.W.2d 317 (Tex. App.–Corpus Christi 1999, pet. ref'd), and *Lary v. State*, 15 S.W.3d 581 (Tex. App.–Amarillo 2000, pet. ref'd). The defendants in *Heard* and *Lary* argued that the informant's testimony was necessary to a fair determination of guilt or innocence at trial, not that the informant was merely used to procure a search warrant and was not reasonably believed by the officer.[4] *See Lary*, 15 S.W.3d at 585 (seeking disclosure of informant because identity of defendant was in issue); *Heard*, 995 S.W.2d at 321 (seeking disclosure because informant had intimate knowledge of location of alleged murder weapon such that it appeared informant participated in the crime). In both these cases, the defendant made a preliminary showing of a reasonable probability that the "informer may be able to give testimony necessary to a fair determination of . . . guilt or innocence," TEX. R. EVID. 508(c)(2), and the courts of

---

[4] Rule 508(c)(2) governs the situation where an informant may be able to give testimony necessary to a fair determination of guilt or innocence, and it provides:

> If it appears from the evidence in the case or from other showing by a party that an informer may be able to give testimony necessary to a fair determination of a material issue on the merits in a civil case to which the public entity is a party, or on guilt or innocence in a criminal case, and the public entity invokes the privilege, the court shall give the public entity an opportunity to show in camera facts relevant to determining whether the informer can, in fact, supply that testimony. The showing will ordinarily be in the form of affidavits, but the court may direct that testimony be taken if it finds that the matter cannot be resolved satisfactorily upon affidavit. If the court finds that there is a reasonable probability that the informer can give the testimony, and the public entity elects not to disclose the informer's identity, the court in a civil case may make any order that justice requires, and in a criminal case shall, on motion of the defendant, and may, on the court's own motion, dismiss the charges as to which the testimony would relate. Evidence submitted to the court shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the public entity. All counsel and parties shall be permitted to be present at every stage of proceedings under this subdivision except a showing in camera, at which no counsel or party shall be permitted to be present.

TEX. R. EVID. 508(c)(2).

28

appeals held that the only way to provide the defendant with a fair trial was to question the informant *in camera* to determine if the informant could provide the testimony the defendant sought. *Lary*, 15 S.W.3d at 585; *Heard*, 995 S.W.2d at 321.

In this case, however, under 508(c)(3), Shedden and Montignani were not entitled to a hearing until they made a showing that the officer executing the warrant affidavit did not reasonably believe the informant. TEX. R. EVID. 508(c)(3). Whether the officer reasonably believed the informant is not the same as whether the informant was actually telling the truth, and it is not necessary for the trial court to examine the informant in order to determine whether the officer reasonably believed him or her. *See Blake v. State*, 125 S.W.3d 717, 728 (Tex. App.–Houston [1st Dist.] 2003, no pet.) (stating that inquiry is "whether the judge is satisfied that the informant was reasonably believed to be reliable or credible"); *see also Washington v. State*, No. 05-95-01121-CR, 1997 WL 83790, at *5 (Tex. App.–Dallas Feb. 28, 1997, no pet.) (not designated for publication) ("While appellant may raise some doubt as to whether the informant told the truth (an issue we need not address and do not decide), he merely speculates that Officer Moses recklessly included false statements in his affidavit."). Because Shedden and Montignani failed to make a preliminary showing that Officer Day did not reasonably believe the informant to be reliable or credible, they were not entitled to an *in camera* hearing. *Blake*, 125 S.W.3d at 728; *see also Sanchez Selph v. State*, No. 14-03-01112-CR, 2005 WL 851184, at *5 (Tex. App.–Houston [14th Dist.] Apr. 14, 2005, no pet.) (mem. op., not designated for publication) ("The plain wording of Texas Rule of Evidence 508(c)(3) requires an in camera hearing only if the trial court requires the disclosure of an informant's identity.").

## B.    Constitutional Violations

Next, Shedden and Montignani argue that the trial court's refusal to compel the State to disclose the confidential informant's identity violated various constitutional provisions. U.S. CONST. amends. V, VI, XIV; Tex. Const. art. I §§ 10, 19. Their briefs implicate three different rights that they assert were violated: (1) their right to a fair trial, (2) the right to compel witnesses to appear on their behalf, and (3) their right to confront witnesses against them.

With respect to the first two rights, Shedden and Montignani do not explain how the failure to disclose the identity of the informant deprived them of a fair trial or deprived them of the right to compel witnesses on their behalf. TEX. R. APP. P. 38.1(h). More importantly, Shedden and Montignani did not raise these complaints below. Shedden and Montignani objected at the pretrial motion to suppress hearing that the court's refusal to disclose the identity of the informant violated their right to confront the witnesses against them, and generally objected that the ruling violated their "due process" rights. We hold that this objection was not specific enough to preserve their arguments that the ruling violated their rights to a "fair trial," whatever that argument may encompass in this case, or that they were denied the right to compulsory process. *See Coleman v. State*, 966 S.W.2d 525, 528 (Tex. Crim. App. 1998) ("To exercise the federal constitutional compulsory process right, the defendant must make a plausible showing to the trial court, by sworn evidence or agreed facts, that the witness' testimony would be both material and favorable to the defense."); *Hawkins v. State*, 964 S.W.2d 767, 769-71 (Tex. App.–Beaumont 1998, pet. ref'd) (holding defendant waived right to complain about due process violations by failing to object in trial court); *see also Jackson v. State,* No. 14-05-00329-CR, 2007 WL 608473, at *6 (Tex. App.–Houston [14th Dist.] Mar. 1, 2007, no pet.) (mem. op., not designated for

30

publication) (holding defendant waived argument that he was denied right to compulsory process because he did not attempt to offer evidence, was not prevented from doing so, did not object to inability to present evidence, or make an offer of proof); *Taylor v. State*, No. 03-03-00624-CR, 2006 WL 1649037, at *15 (Tex. App.–Austin June 16, 2006, pet. ref'd) (mem. op., not designated for publication) (holding constitutional right to present a defense may be waived by failure to object). We will, however, address Shedden and Montignani's argument that the trial court's ruling violated their right to confront the witnesses against them, as their counsel clearly argued this below and obtained a ruling on the objection.

In *McCray v. Illinois,* the United States Supreme Court addressed this very issue. *See generally* 386 U.S. 300 (1967). In that case, a police officer relied on a confidential informant's report that the defendant could be found in a particular location and would be in possession of drugs. *Id.* at 302. The officer testified that he had known the informant for a year, that the informant had provided him with information on several occasions, and that the informant's reports had led to convictions. *Id.* at 303. The defendant was located at the place identified by the informant, was arrested, and was found to be in possession of heroin. *Id*. at 301-03. The defendant moved to suppress the heroin, and the arresting officer testified at the hearing. *Id.* When the defendant asked the officer to reveal the informant's identity, the State objected that the informant's identity was privileged, and the trial court sustained the objection. *Id.* at 303.

On appeal, the defendant argued that the trial court violated the constitution when it sustained the State's objections to the defendant's questions about the informant's identity. *Id.* at 305. The Supreme Court disagreed. *Id.* It held that under Illinois law, much

31

like Texas's informant's privilege, the State was not required to disclose the informant's identity as long as the "trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information provided by a reliable informant." *Id.*

The Court held that "the informer is a vital part of society's defensive arsenal." *Id.* (quoting *State v. Burnett*, 201 A.2d 39, 43-45 (N.J. 1964)). It distinguished between a situation where the informant is relied on merely to support probable cause for a warrant or for a search, and the defendant is challenging probable cause through a motion to suppress, and where the informant may provide testimony relevant to guilt or innocence at trial:

> We must remember also that we are not dealing with the trial of the criminal charge itself. There the need for a truthful verdict outweighs society's need for the informer privilege. Here, however, the accused seeks to avoid the truth. The very purpose of a motion to suppress is to escape the inculpatory thrust of the evidence in hand, not because its probative force is diluted in the least by the mode of seizure, but rather as a sanction to compel enforcement officers to respect the constitutional security of all of us under the Fourth Amendment. If the motion to suppress is denied, the defendant will still be judged upon the untarnished truth. The Fourth Amendment is served if a judicial mind passes on the existence of probable cause. Where the issue is submitted upon an application for a warrant, the magistrate is trusted to evaluate the credibility of the affiant in an ex parte proceeding. As we have said, the magistrate is concerned, not with whether the informant lied, but whether the affiant is truthful in his recitation of what he was told.

*Id.* (quoting *Burnett*, 201 A.2d at 43-45).

The Court reiterated that when the disclosure of the informant's identity is relevant and helpful to the defense at trial, the privilege must give way. *Id.* at 310. However, it referred to its substantial precedent holding that "federal officers need not disclose an informant's identity in applying for an arrest or search warrant," and that the affidavit in

support of probable cause may be based on hearsay as long as the magistrate is informed about the reasons the affiant believes the informant is credible and his information is reliable. *Id.* at 311. Prohibiting the use of informants in this manner would severely hamper the government's investigation of narcotics law violations. *Id.* The Court then refused to hold that the failure to disclose the informant's identity violated the defendant's right to confront witnesses against him. *Id.* It said that the right was satisfied by having the officers testify in open court about the reasons they believed the informant, and by having those officers subject to cross-examination. *Id.* at 313.

In *Crawford v. Washington*, the Supreme Court substantially altered its confrontation clause jurisprudence, holding that testimonial statements of witnesses who are not present at trial may not be admitted in evidence unless the declarant is unavailable to testify and the defendant was afforded a prior opportunity to cross-examine the declarant. 541 U.S. 36, 59 (2004). In *Crawford*, however, the testimonial statements were not admitted at a pretrial hearing to establish probable cause to support a warrant, but were admitted at the defendant's trial to establish guilt for the offense. *Id.* at 40. We find nothing in *Crawford* that indicates an intent to overrule the Court's prior holding in *McCray* as it relates to confrontation at a pretrial *Franks* hearing, where the only issue is whether the police officer executing a warrant affidavit reasonably believed the information contained in the affidavit to be true. *See People v. Felder,* 129 P.2d 1072, 1074 (Colo. 2005); *Fair v. State,* No. S08A0426, 2008 WL 2719149, at *10 (Ga. July 14, 2008); *cf. Baca v. State,* No. 11-04-00021-CR, 2006 WL 1495022, at *4 (Tex. App.–Eastland June 1, 2006, no pet.) (not designated for publication) (holding officer's testimony about confidential informant was not testimonial and did not violate *Crawford*). We decline to extend *Crawford* in this manner,

33

and we follow *McCray*. Because Officer Day was subjected to rigorous examination on the only relevant issue at the pretrial hearing, Shedden and Montignani's right to confront the witnesses against them was not violated by the trial court's refusal to order disclosure of the informant's identity. Accordingly, we overrule their first issue.

### IV. Motions to Suppress

Shedden and Montignani further argue that the trial court erred in denying their motions to suppress because they established that Officer Day submitted intentional or recklessly made false statements in the warrant affidavit. The trial court denied the motions to suppress at the pretrial hearing. The issue of probable cause to support the search warrant was the focus of both trials, and the jury was instructed on the law of probable cause and that it could disregard the evidence obtained as a result of the search if it found the search to be illegal. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005). Neither Shedden nor Montignani argue in this appeal that the jury's implicit determination that the search was legal was erroneous; however, this does not deprive them of their right to appeal the pretrial ruling on the motion to suppress. *See Pierce v. State*, 32 S.W.3d 247 (Tex. Crim. App. 2000) (holding trial court's instruction to jury under article 38.23 and subsequent guilty verdict did not deprive defendant of right to appeal prior ruling on motion to suppress). Their arguments on appeal focus solely on the pretrial ruling.

Under *Franks v. Delaware*, if the defendant demonstrates by a preponderance of the evidence (1) a false statement, (2) made by the affiant intentionally, knowingly, or with reckless disregard for the truth, and (3) that the statement was necessary to a finding of probable cause, the trial court must disregard the false information and determine if the

34

rest of the information in the warrant affidavit establishes probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). *Franks* applied an exclusionary principle:

> In the event that at [the pretrial hearing] the allegation of perjury or reckless disregard is established by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Id.; Harris v. State*, 227 S.W.3d 83, 85 (Tex. Crim. App. 2007).

Shedden and Montignani argue that Officer Day's statement in the warrant affidavit that the informant was inside their home within 48 hours prior to May 30 was a false statement intentionally, knowingly, or recklessly made. They argue that the witnesses they presented disproved this statement because their witnesses established that they were not home during that time period. As we stated above, Shedden and Montignani presented evidence at the hearing that they were home for all but a few hours of the 48-hour time period within which Officer Day claimed the informant was inside their house. Contrary to their arguments, the evidence they presented was not inconsistent with Officer Day's testimony. Officer Day testified that the informant was in the home on the night of May 30. Whether the 48-hour period is counted back from May 30 or from June 1, the night of May 30 is included within the time period and is consistent with Officer Day's testimony. Furthermore, Officer Day testified that the informant had proved reliable in the past and that he had no reason to doubt the information. In *Lopez*, under similar circumstances, we held that the trial court was free to believe the officer's testimony and to disbelieve the defendant's story that he was not home at the time the informant allegedly saw the contraband in his home. 760 S.W.2d at 773. As in *Lopez,* we hold that Shedden and

35

Montignani did not establish that Officer Day intentionally, knowingly, or recklessly made a false statement in his warrant affidavit. *Id.* Accordingly, the trial court did not err in denying their motions to suppress. We overrule their second issue.

## V. Evidence of Montignani's Extraneous Offenses

By her final issue, Montignani argues that the trial court erroneously admitted evidence of her extraneous offenses. She claims that she did not receive sufficient notice that the extraneous offenses would be offered. Specifically, Montignani argues that Lockett and Codney should not have been allowed to testify that they had purchsed methamphetamine from Montignani in the past.[5]

Montignani raised these issues in a pretrial motion in limine, which the court addressed at a hearing on June 18, 2007. Specifically, she argued that on January 11, 2007, she formally requested notice of any extraneous offenses that would be used at trial. The State argued that it had to obtain a bench warrant to bring Lockett and Codney in for questioning, as they were both in federal custody. The defense was aware of that. The State argued that at the beginning of June 2007, the prisoners arrived and were interviewed, and the State notified Montignani's counsel and offered to allow Montignani's counsel to review his notes, explaining what the proposed testimony would be. With regard to Montignani's notice, the trial court pointed out that the defense must have known that Lockett and Codney would be called to testify because that possibility somehow

---

[5] Montignani states in her brief that "[t]he record contains other inadmissible extraneous acts, as well as inadmissible hearsay, that Montignani complained about early and received no relief from the Trial Court. Again, even more facts showing Montignani did not receive a fair trial." She cites to testimony from the investigating officers that Montignani's name had come up in debriefings. She also argues that "[e]vidence against Montignani was allowed in a free for all manner over objection, even crucial photos and pieces of evidence with little to no chain of custody." Montignani, however, does not provide any argument or citation to authority for these problems she mentions, briefly, in her appellant's brief. These arguments are inadequately briefed, and we will not address them. TEX. R. APP. P. 38.1(h).

required Montignani to obtain new counsel. The trial court stated that it would restrict Lockett's and Codney's testimony to events that occurred after the year 2000, but that extraneous offenses after that date would be allowed in evidence.

At trial, Montignani did not object to Lockett's or Codney's testimony on the grounds that she did not receive adequate notice of the testimony, that the testimony constituted improper evidence of extraneous offenses under rule 404, or that the prejudice outweighed the probative value of the evidence under rule 403. Under these circumstances, the State argues that Montignani waived her objections to the evidence. We agree.

It is well settled that a ruling on a pretrial motion in limine preserves nothing for appellate review. *Roberts v. State*, 220 S.W.3d 521, 533 (Tex. Crim. App. 2007). Rather, the appellant must object at the time the evidence is offered to preserve error. *Id.*; *see also Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). Because Montignani did not object to the testimony at trial, her complaints on appeal are waived.

Even assuming the issue was properly preserved, one of Montignani's theories at trial was that the drugs in the home belonged to Shedden and that she was unaware of the drugs. Before Lockett and Codney testified, Montignani's counsel cross-examined Agent Beckett and specifically elicited testimony from her to support the defensive theory that Montignani did not know the drugs were in the home and that they belonged to Shedden. The State argues that because Montignani raised this defense, it was entitled to admit the extraneous offense evidence to rebut this defensive theory. We agree.

We review the trial court's decision to admit extraneous offense evidence under an abuse of discretion standard. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). "This standard requires an appellate court to uphold a trial court's admissibility decision

37

when that decision is within the zone of reasonable disagreement." *Id.* Texas Rule of Evidence 404(b) provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX. R. EVID. 404(b). Evidence of extraneous offenses may be admissible to rebut a defense theory. *See Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 1991). A trial court may consider arguments raised by the defense during cross-examination of the State's witnesses when determining if the defense "opened the door" to the extraneous offenses. *Powell*, 63 S.W.3d at 439; *Ransom v. State*, 920 S.W.2d 288, 301 (Tex. Crim. App. 1994). When the defendant raises a defensive theory that opens the door to extraneous offenses, the State is not required to give advanced notice that it will use the extraneous offenses to rebut the defensive theory. *Jaubert v. State*, 74 S.W.3d 1, 4 (Tex. Crim. App. 2002).

In this case, the State did not mention Lockett or Codney during voir dire or in its opening statement. Through her cross-examination of Agent Beckett, Montignani raised the defensive theory that the drugs in her home belonged to Shedden and that she had no knowledge of the drugs. The trial court was within its discretion to allow the State to rebut this defensive theory by presenting Lockett's and Codney's testimony, even without adequate advance notice to Montignani. *Jaubert*, 74 S.W.3d at 4; *Powell*, 63 S.W.3d at 439.

## VI.  Conclusion

Having overruled all appellants' issues, we affirm the judgments of conviction.

_____
GINA M. BENAVIDES,
Justice

Publish.
Tᴇx. R. Aᴘᴘ. P. 47.2(b).

Opinion delivered and filed this
the 29th day of August, 2008.